(Nos. 64427, 64458 cons.—

ILLINOIS GASOLINE DEALERS ASSOCIATION *et al.*, Appellants, v. THE CITY OF CHICAGO, Appellee.—MIDWEST PETROLEUM MARKETERS ASSOCIATION *et al.*, Appellants, v. THE CITY OF CHICAGO, Appellee.

*Opinion filed January 25, 1988.*

SIMON, J., took no part.

George W. Keeley, of Halfpenny, Hahn & Roche, of Chicago, for appellants Illinois Gasoline Dealers Association *et al.*

David A. Epstein, of Carroll, Sain & Epstein, Ltd., of Chicago, for appellants Midwest Petroleum Marketers Association *et al.*

Judson H. Miner, Corporation Counsel, of Chicago (Ruth M. Moscovitch and Julie Elena Brown, of counsel), for appellee.

JUSTICE RYAN delivered the opinion of the court:

Plaintiffs Illinois Gasoline Dealers Association (docket No. 64427) and Midwest Petroleum Marketers Association (docket No. 64458) filed separate lawsuits in the circuit court of Cook County, contesting the adoption by the city council of the City of Chicago of an amendment to chapter 200.10 of the Municipal Code of Chicago creating a "Chicago Vehicle Fuel Tax." The two cases were heard together in the circuit court on cross-motions for summary judgment. The circuit court upheld the challenged tax, granted summary judgment for defendant, and denied plaintiffs' cross-motions. Plaintiffs in both cases requested direct appeal to this court. This court allowed direct appeal pursuant to Supreme Court Rule 302(b) (107 Ill. 2d R. 302(b)) and consolidated the cases for review. We affirm the judgment of the circuit court.

On September 24, 1986, during a regular meeting of the Chicago city council, an alderman moved, pursuant to Council Rule 41, to take up a proposed vehicle fuel tax ordinance which had been referred to the council's finance committee on February 13, 1986. Rule 41 provides, in part:

> "Whenever any referred matter *** shall not have been reported back to the City Council by the Committee to which referred, within a period of (60) days, any alderman may move to discharge the committee from further consideration of that matter. The motion to discharge *** shall require the affirmative vote of a majority of all the aldermen entitled by law to be elected." (Rules of the Chicago City Council, R. 41 (1986).)

The council voted on the motion to discharge, with 25 aldermen voting in favor of discharge and 23 aldermen

voting against discharge. The mayor, as chairman of the council, then cast his vote in favor of the motion to discharge, and declared the motion passed by a vote of 26 to 23. According to the official record of the city council of Chicago, an alderman who had opposed the motion stated that he had a point of order and moved to appeal the ruling of the chair, citing Rule 41 and arguing that a majority of all aldermen did not vote in favor of discharge and that the motion therefore failed. The chair ruled the point of order not well taken.

A member of the council then moved to substitute a new version of the "Chicago Vehicle Fuel Tax Ordinance" for the version which had been discharged from committee, which motion prevailed by a *viva voce* vote. In the final vote to adopt or reject the substitute ordinance, 25 aldermen voted in favor of adoption, 23 voted against adoption, and the chair again cast its vote in favor of the ordinance, declaring that it had passed 26 to 23.

The main provision of the ordinance as adopted reads:

> "200.10—2. A tax is hereby imposed upon the privilege of purchasing or using, in the City of Chicago, vehicle fuel purchased in a sale at retail. The tax shall be at a rate of five cents per gallon of vehicle fuel. The ultimate incidence of and liability for payment of the tax shall be upon the purchaser or user of the vehicle fuel, and nothing in this chapter shall be construed to impose a tax upon the occupation of selling or distributing vehicle fuel. It shall be a violation of this chapter for any distributor or retail dealer to fail to add this tax to the retail price of vehicle fuel or to absorb the tax. This tax shall be in addition to any and all other taxes." Chicago Municipal Code, ch. 200.10—2 (1986).

The ordinance imposes on fuel dealers the duty to collect the tax and keep collection records, and subjects them to various penalties for failure to comply with the

requirements of the ordinance. (Chicago Municipal Code, chs. 200.10—4, 200.10—8, 200.10—9 (1986).) Additionally, section 3 of the ordinance provides that all amounts received from the imposition of the tax will be used to provide for an abatement of a corresponding amount of property taxes. Journal of Proceedings of the City Council of Chicago, September 24, 1986, at 7 (Special Pamphlet Edition).

Plaintiffs assert four grounds for invalidating the ordinance: first, section 3 of the ordinance is an invalid delegation of the council's taxing power; second, the fuel tax is an unauthorized occupation tax that violates the Illinois Constitution; third, the fuel tax, taken with other Chicago taxes, constitutes multiple taxation in violation of the Illinois Constitution; and finally, plaintiffs argue that the city council of Chicago failed to follow its own procedures in voting to remove the ordinance from committee. We consider first the plaintiffs' claim that the ordinance is invalid as an improper delegation of legislative power.

Plaintiffs argue that the fuel tax ordinance is invalid because its real estate tax abatement provisions impermissibly delegate the council's taxing power to the city comptroller. Additionally, plaintiffs claim that these abatement provisions are not severable from the remainder of the fuel tax ordinance. Section 3 provides:

"(a) The City Comptroller is authorized and directed, on or before March 31, 1987, (i) to determine the amounts received from the imposition of the Chicago Vehicle Fuel Tax which were collected and deposited in and were made available to the Corporate Fund for Year 1986 and (ii) to file in the office of the City Clerk a notification of such determination.

(b) As and to the extent that any of the amounts described in Subsection (a) hereof were so collected, deposited and made available to the Corporate Fund, the City Comptroller is authorized and directed *** to file in the

offices of the County Clerks \*\*\* certificates of abatement with respect to the property taxes levied for the Year 1986 which are to be extended for collection in the Year 1987. Such certificates shall refer to the amount of property taxes levied for the Year 1986, shall indicate the amount of such property taxes to be abated resulting from the collection of the Chicago Vehicle Fuel Tax and shall further indicate the remainder of such property taxes which are to be extended for collection in the Year 1987 by said County Clerks." (Journal of Proceedings of the City Council of Chicago, September 24, 1986, at 6 (Special Pamphlet Edition).)

Plaintiffs contend that the powers of "determination" delegated to the comptroller permit executive discretion in the ultimate calculation of the amount of the tax levy. They assert that this court has narrowly viewed delegations of authority to administrative officials in the area of governmental taxing powers, citing *Giebelhausen v. Daley* (1950), 407 Ill. 25.

In *Paper Supply Co. v. City of Chicago* (1974), 57 Ill. 2d 553, it was argued that the provision that the Director of the Department of Revenue impose a late-payment penalty was invalid for the reason that it was an unlawful delegation of authority. This court, however, did not find an improper delegation, stating:

"The section fixes the interest and late payment penalty rates and confers upon the director only the power to make a finding of fact that 'the delinquency is not due to any fault on the part of the taxpayer,' in which event the late payment penalty is not assessed. Such factual determinations by administrative agencies or officials are authorized in countless statutes and ordinances, and the provision results in neither an unlawful delegation of authority nor the improper exercise of a judicial function." (57 Ill. 2d at 579.)

Similarly, in the case at bar, the ordinance vests in the comptroller no discretion as to who will be taxed or who will receive abatements of their property taxes. The or-

dinance merely involves a factual determination by the comptroller: to calculate the revenues received by the City of Chicago from the vehicle fuel tax. The ordinance vests no discretionary powers in the comptroller to collect or deposit or make available to the corporate fund the tax revenues. Therefore, plaintiffs' assertion that this ordinance allows the comptroller to determine the amount or rate of taxation is simply not supported by the language of the ordinance. (See *Brown v. City of Chicago* (1969), 42 Ill. 2d 501, 506.) Furthermore, such procedures are not unknown in this State. Similar abatement procedures are provided for in section 8—3—4 of the Municipal Code of 1961 (Ill. Rev. Stat. 1985, ch. 24, par. 8—3—4).

The plaintiffs' reliance on *Bowsher v. Synar* (1986), 478 U.S. 714, 92 L. Ed. 2d 583, 106 S. Ct. 3181, is misplaced. In *Bowsher*, the powers which Congress had delegated to the Comptroller General, a legislative officer, were more than mere fiscal calculations and required the exercise of "sophisticated economic judgment." (478 U.S. 714, 747, 92 L. Ed. 2d 583, 610, 106 S. Ct. 3181, 3199 (Stevens, J., concurring).) The Supreme Court found that this was an exercise of executive authority and held the vesting of that authority in the Comptroller General, a legislative officer, invalid. The situation is different in the case before us. For the reasons noted, we conclude that the ordinance has not been shown to be an invalid delegation of the council's power to tax.

We next consider whether the ordinance imposes an impermissible tax upon "occupations" in contravention of section 6(e) of article VII of the Illinois Constitution of 1970. The trial court concluded that the vehicle fuel tax was not a tax upon occupations and, therefore, it was a proper home rule tax. For the reasons set forth below, we agree with the trial court.

The 1970 Illinois Constitution provides:

"(a) *** Except as limited by this section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs ***.

* * *

(e) A home rule unit shall have only the power that the General Assembly may provide by law *** [2] to license for revenue or [to] impose taxes upon or measured by income or earnings or upon occupations.

* * *

(m) Powers and functions of home rule units shall be construed liberally." (Ill. Const. 1970, art. VII, §6.)

A major limitation on home rule power is the restriction upon occupation taxes. (Ill. Const. 1970, art. VII, §6(e).) In order for home rule units to tax occupations, the General Assembly must specifically authorize the tax. To determine if a tax constitutes an occupation tax, it must be judged by the standard of whether it regulates and controls a given occupation, or imposes a tax for the privilege of engaging in a given occupation, trade or profession (*Reif v. Barrett* (1933), 355 Ill. 104, 109), or finally, whether it imposes a tax on the privilege of engaging in the business of selling services (*Commercial National Bank v. City of Chicago* (1981), 89 Ill. 2d 45, 62).

Plaintiffs do not contend that the ordinance was imposed to regulate or control a given occupation; rather, they argue that the practical effect of the ordinance is to place the legal incidence of the tax on those engaged in the business of selling vehicle fuel. Plaintiffs rely heavily upon our decision in *Commercial National Bank v. City of Chicago* (1981), 89 Ill. 2d 45, which involved a tax on services. This court concluded that the tax on services was an occupation tax. In *Commercial National Bank*, we held that a home rule tax that declares that the legal incidence of the tax is on the *purchaser* of *services*, but which imposes all legal responsibilities and obligations on the person engaged in providing that service, is an "oc-

cupation tax" within the meaning of article VII, section 6(e). 89 Ill. 2d at 68.

This court, in holding the service tax invalid, relied on the debates of the delegates to the 1970 Illinois constitutional convention. The debates indicated that the constitutional prohibition on local occupation taxes was intended to apply to taxes on services. Therefore, we held that a perfunctory declaration that the legal incidence of the tax was on the purchaser was insufficient to overcome the "consensus of the convention" that home rule taxes on services are within the limitation of section 6(e) of article VII. (*Commercial National Bank v. City of Chicago* (1981), 89 Ill. 2d 45, 67.) In analyzing the practical effect of the service tax, this court found that the City of Chicago had attempted "to transform an occupation tax into a tax upon the purchaser" by the mere inclusion of "magic words" in the ordinance. 89 Ill. 2d at 67.

This practical-effect analysis, however, is not appropriate in considering the tax now before us because, as disclosed by the constitutional convention debates, it is not a tax which the constitutional convention intended to deny to home rule units. The report of the Local Government Committee of the convention set forth several examples of permissible home rule taxes. Significantly, the report stated that under a city's home rule power, it could impose a tax at a fixed rate *per gallon on gasoline* and that taxes upon hotel rooms, liquor, food, drug, etc., were permissible. (7 Record of Proceedings, Sixth Illinois Constitutional Convention 1655-56.) The Chicago vehicle fuel tax is a tax at a fixed rate of five cents per gallon on vehicle fuel. The shifting of the incidence of the tax is not here an attempt to evade the intent of the constitutional convention to prohibit a tax on the sale of services.

This conclusion is consistent with cases which have upheld home rule taxes against the contention that they were taxes imposed upon occupations. The vehicle fuel tax is substantially similar to other home rule taxes that have been upheld, such as in *Mulligan v. Dunne* (1975), 61 Ill. 2d 544 (liquor tax), *S. Bloom, Inc. v. Korshak* (1972), 52 Ill. 2d 56 (cigarette tax), and *Town of Cicero v. Fox Valley Trotting Club, Inc.* (1976), 65 Ill. 2d 10 (entertainment tax). In these cases, significance was attached to the provisions in the ordinances indicating that the taxes were not occupation taxes but rather taxes on the purchaser. Moreover, in these cases the tax was on the transfer of a tangible object (liquor, cigarettes), or the privilege of attending an amusement. Similarly, the ordinance in the case at bar is a tax on the transfer of a tangible object (vehicle fuel). Accordingly, the vehicle fuel tax is a proper home rule tax consistent with the consensus expressed in the constitutional convention.

We find no merit in plaintiff's contention that the vehicle fuel tax is an occupation tax because the ordinance imposes certain obligations and burdens upon the seller. This court has sustained the validity of home rule tax ordinances against similar arguments in *Paper Supply Co. v. City of Chicago* (1974), 57 Ill. 2d 553, and *Mulligan v. Dunne* (1975), 61 Ill. 2d 544. Under the previous decisions of this court, it is clear that the vehicle fuel tax is not a tax upon occupations.

Next, we consider whether the Chicago vehicle fuel tax is unconstitutional as multiple taxation, as non-uniform taxation, and as abuse of the home rule tax powers under the due process, equal protection and uniform taxation provisions of the Illinois Constitution. The trial court held that the Chicago vehicle fuel tax was not unconstitutional merely because it was imposed in addition to other taxes. Plaintiffs assert that the city has created an unconstitutional scheme of taxation—at least two

home rule taxes upon the same purchaser, for the same transaction, exercising the same privilege, for purchasing the same item of tangible personalty. The plaintiffs conclude that under *Fiorito v. Jones* (1968), 39 Ill. 2d 531, 535-36, this tax is invalid because it singles out a single subclass of retail purchases of tangible personalty to the exclusion of all others, thereby violating due process, equal protection, and uniformity of taxation principles.

Section 2 of article IX of the Illinois Constitution of 1970 states:

> "In any law classifying the subjects or objects of non-property taxes or fees, the classes shall be reasonable and the subjects and objects within each class shall be taxed uniformly. Exemptions, deductions, credits, refunds and other allowances shall be reasonable."

The rather ambiguous argument against "double taxation" stems from the constitutional mandate that taxation shall be uniform. (See Ill. Const. 1870, art. IX, §1.) Plaintiffs argue that "uniformity of taxation is violated by double taxation." (See *People ex rel. Hanrahan v. Caliendo* (1971), 50 Ill. 2d 72, 83.) However, in *People v. Deep Rock Oil Corp.* (1931), 343 Ill. 388, this court noted that there is no constitutional restraint against more than one privilege or excise tax where the total does not exceed reasonable taxation for the privilege enjoyed. Moreover, the defendant must show that the aggregate charge bears no reasonable relation to the privilege granted. (343 Ill. at 397.) This court has said: "Double taxation means taxing twice, for the same purpose, in the same year, some of the property in the territory in which the tax is laid, without taxing all of it a second time." (*People ex rel. Toman v. Advance Heating Co.* (1941), 376 Ill. 158, 163.) There may be other taxes of the city which overlap the tax in question, but there has been no showing that another tax has been imposed by

the City of Chicago upon the privilege of purchasing or using in Chicago vehicle fuel purchased in a sale at retail.

Legislative bodies have very broad powers in classifying the objects of taxation, and such classifications will withstand constitutional attack so long as they are reasonable. (*Lehnhausen v. Lake Shore Auto Parts Co.* (1973), 410 U.S. 356, 35 L. Ed. 2d 351, 93 S. Ct. 1001.) Because there is a presumption favoring the validity of classifications made by legislative bodies in taxing matters, one who attacks them has the burden of proving that such classifications are arbitrary (*Jacobs v. City of Chicago* (1973), 53 Ill. 2d 421), and the classification must be upheld if a state of facts may reasonably be conceived that would sustain it (*Department of Revenue v. Warren Petroleum Corp.* (1954), 2 Ill. 2d 483, 490). Plaintiffs have not demonstrated how the imposition of the tax in question constitutes an arbitrary classification.

Finally, plaintiffs challenge the validity of the adoption of the fuel tax ordinance. The plaintiffs assert that Council Rule 41 requires that a motion to discharge a proposed ordinance from a committee receive "the affirmative vote of a majority of all the aldermen entitled by law to be elected." (Rules of the Chicago City Council, R. 41 (1986).) Plaintiffs allege that the ordinance did not receive a majority vote. Votes supporting discharge consisted of 25 cast by aldermen and one cast by the mayor as chairman of the council. Plaintiffs argue that, under the plain meaning of Rule 41, the chair's ruling that the motion had carried was erroneous, because the rule required the vote of 26 *aldermen*. Plaintiffs dispute Mayor Washington's invocation of the Illinois Municipal Code, which provides that the mayor shall vote "where one half of the aldermen elected have voted in favor of an ordinance, resolution or motion even though there is no tie vote." (Ill. Rev. Stat. 1985, ch. 24, par. 3—11—

14.) Plaintiffs argue that the majority set by the council rule must prevail, as home rule units have the power to set their own majorities. See *Allen v. County of Cook* (1976), 65 Ill. 2d 281, 291-92.

We decline to review plaintiffs' assertions that the fuel tax ordinance was improperly removed from committee and therefore improperly adopted, as the plaintiffs do not claim that improper adoption was a violation of any constitutional or statutory provision. Plaintiffs' claim is based on an alleged violation by the city council of Rule 41 of its own rules. The general rule governing judicial review of substantive legislation is that "an act cannot be declared invalid for a failure of a house to observe its own rules. Courts will not inquire whether such rules have been observed in the passage of the act." (1 A. Sutherland, Statutory Construction §§7.01, 7.04 (4th ed. 1985); see also *Rock v. Thompson* (1981), 85 Ill. 2d 410, 451 (Ryan, J., dissenting).) In *Chirikos v. Yellow Cab Co.* (1980), 87 Ill. App. 3d 569, 574, the court said, "This court cannot handle matters which in effect are attempts to overrule decisions of a legislative body based upon alleged failure to follow requirements imposed by that body itself. *** We have authority to invalidate legislation adopted by the city council only upon grounds that the enactment violates a provision of the Federal or State constitutions or violates the mandate of a State or Federal statute." (See also 8 Ill. L. & Prac. *Cities, Villages, Etc.* §124 (1954).) In sum, in the absence of a challenge to the ordinance on the grounds that failure to comply with Rule 41 violated some right held by plaintiffs under the State or Federal Constitutions or State or Federal laws, this court will not review the question presented.

For the reasons stated above, we conclude that the plaintiffs have not demonstrated that the vehicle fuel tax ordinance violates the Illinois Constitution or any Illinois

statute. We therefore affirm the judgment of the circuit court granting summary judgment to defendant City of Chicago.

*Judgment affirmed.*

JUSTICE SIMON took no part in the consideration or decision of this case.