WILLIAM DeWOSKIN, Plaintiff-Appellant, v. LOEW'S CHICAGO CINEMA, INC., d/b/a Sony Theaters, *et al.*, Defendants-Appellees.

First District (4th Division) No. 1—98—1971

Opinion filed July 8, 1999.

506

Miller Faucher Cafferty & Wexler, of Chicago (Melvin A. Miller, Dom J. Rizzi, and Lee J. Schwartz, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Patricia A. Shymanski, Thomas M. Burnham, Sanjay Tailor, and Paul A. Castiglione, Assistant State's Attorneys, of counsel), for appellees.

JUSTICE HOFFMAN delivered the opinion of the court:

The plaintiff, William DeWoskin, filed the instant class action suit seeking, *inter alia*, a declaration that the Cook County Amusement Tax Ordinance, as originally enacted and as later amended, is unconstitutional and an injunction prohibiting the County of Cook (County) from collecting the tax imposed thereunder. By orders entered May 23, 1997, and May 8, 1998, the circuit court denied the plaintiff all requested relief and dismissed the action. The plaintiff has appealed, and for the reasons that follow, we affirm in part and reverse in part.

On November 22, 1996, the Cook County Board of Commissioners approved and adopted the Cook County Amusement Tax Ordinance and, thereafter, amended it on March 18, 1997 (the amended ordinance will hereafter be referred to as the Ordinance). The Ordinance imposes a tax upon "patrons of any amusement which takes place within the County, in an amount equal to 3% of the admission fees or other charges paid for the privilege to enter, to witness, or to view such amusement." Cook County Amusement Tax Ordinance (amended March 18, 1997). It defines an "amusement" as:

"any exhibition, performance, presentation or show for entertainment purposes, including, but not limited to, any theatrical,

dramatic, musical or spectacular performance, promotional show, motion picture show, flower, poultry or animal show, animal act, circus, rodeo, athletic contest, sport, game or similar exhibition, such as boxing, wrestling, skating, dancing, swimming, riding on animals or vehicles, baseball, basketball, softball, soccer, football, tennis, golf, hockey, track and field games, bowling, or billiard and pool games." Cook County Amusement Tax Ordinance (amended March 18, 1997).

The Ordinance specifically provides that "amusement" shall not mean: "any recreational activity offered for public participation or on a membership or other basis, including, but not limited to, carnivals, amusement park rides and games, bowling, billiards and pool games, dancing, tennis, golf, racquetball, swimming, weightlifting, body building or similar activities *** [,] raffles, as defined in the Illinois Compiled Statutes, ch. 230, sec. 15/1, as now or hereafter amended, inter-track wagering facilities, as defined in the Illinois Compiled Statutes, ch. 230, sec. 5/3, as now or hereafter amended, or automatic amusement devices." Cook County Amusement Tax Ordinance (amended March 18, 1997).

The Ordinance exempts certain amusements from its application by providing:

"SECTION 3—TAX IMPOSED

A. *** this tax shall not be imposed upon the privilege of witnessing or participating in any stock show or business show that is not open to the general public or, except as limited below, be imposed upon the privilege of witnessing or participating in any amusement sponsored or conducted by and the proceeds of which, after payment of reasonable expenses, inure exclusively to the benefit of:

(1) Religious, educational and charitable institutions, societies or organizations;

(2) Societies or organizations for the prevention of cruelty to children or animals;

(3) Societies or organizations conducted for the sole purpose of maintaining symphony orchestras, opera performances and artistic presentations, including, but not limited to, musical presentations, and receiving substantial support from voluntary contributions;

(4) Societies or organizations conducted and maintained for the purpose of civic improvement;

(5) Fraternal organizations, legion posts, social and political groups which conduct amusements, sponsored occasionally but not more often than twice yearly for periods not longer than 30 days;

Provided, however, that the entities described in paragraphs (1) to (5) are not-for-profit institutions, organizations, groups or societies, where no part of the net earnings inure to the benefit of any person;

(6) Organizations or persons in the armed services of the United States, or National Guard organizations, reserve officers' associations, or organizations or posts of war veterans, or auxiliary units or societies of such posts or organizations, if such posts, organizations, units or societies are organized in the State of Illinois, and if no part of their earnings inure to the benefit of any person;

(7) Organizations or associations created and maintained for the purpose of benefiting the members, or dependents or heirs of members, of the police or fire departments of any political subdivision of the State of Illinois.

B. The tax imposed in Subsection A of this Section shall not apply to or be imposed upon:

(1) The admission fees to witness live performances of professional theater companies in any auditorium or theater in the County, whose maximum seating capacity, including all balconies, is not more than 750 persons.

\* \* \*

(2) Initiation fees and membership dues paid to a health club, racquetball club, tennis club or a similar club or organization, when such club or organization is organized and operated on a membership basis and for the recreational purposes of its members and its members' guests, \*\*\*. This exemption shall not be construed to apply to any fees paid or based upon, a per-event or a per-admission basis." Cook County Amusement Tax Ordinance § 3 (amended March 18, 1997).

The plaintiff purchased a ticket at a movie theater in Cook County and paid the County amusement tax portion of his admission fee under protest. Thereafter, the plaintiff commenced the instant action.

In count I of his original complaint, the plaintiff alleged that the Ordinance imposed an occupational tax prohibited by article VII, section 6(e), of the Illinois Constitution (Ill. Const. 1970, art. VII, § 6(e)). In count II, the plaintiff alleged that, by reason of the exemptions granted, the Ordinance violated the uniformity clause of the Illinois Constitution (Ill. Const. 1970, art. IX, § 2), constituted special legislation in violation of article IV, section 13, of the Illinois Constitution (Ill. Const. 1970, art. IV, § 13), and violated the equal protection clauses of both the Illinois and United States Constitutions (Ill. Const. 1970, art. I, § 2; U.S. Const., amend. XIV, § 1). The County, Barbara Bruno, and Edward Rosewell (hereinafter collectively referred to as the County Defendants) filed a combined motion under section 2—619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2—619.1 (West 1996)) seeking, *inter alia*, a dismissal of the action under section 2—615 of the Code (735 ILCS 5/2—615 (West 1996)) for failure to state a legally

cognizable claim under any of the above-stated constitutional theories and under section 2—619 of the Code (735 ILCS 5/2—619 (West 1996)) by reason of the plaintiff's alleged lack of standing to challenge the constitutionality of the Ordinance.

Before the County Defendants' motion could be ruled upon, the plaintiff filed a four-count amended complaint, separating the three theories contained in count II into individual counts. In the amended complaint, the plaintiffs again alleged that the Ordinance was an unconstitutional occupational tax (count I), and that, by reason of the exemptions granted, the Ordinance violated the uniformity clause of the Illinois Constitution (count II), violated the equal protection clauses of both the Illinois and the United States Constitutions (count III), and constituted special legislation in violation of the Illinois Constitution (count IV). The County Defendants elected to have their motion to dismiss the plaintiff's original complaint stand as their motion to dismiss his amended complaint.

On May 23, 1997, the trial court entered a memorandum order disposing of the County Defendants' motion. The court found that the plaintiff had standing to challenge the constitutionality of the Ordinance and denied the section 2—619 portion of the motion. As to the section 2—615 portion of the motion, the court: dismissed count I of the plaintiff's amended complaint "with prejudice," finding that the Ordinance was not an occupational tax; denied the motion with respect to counts II and III; and dismissed count IV, the special legislation claim, granting the plaintiff leave to replead that count.

The plaintiff filed a four-count second amended complaint. In order to preserve for appeal the propriety of the May 23, 1997, order dismissing count I of his amended complaint, the plaintiff incorporated that count into his second amended complaint by specific reference. In count II of the second amended complaint, the plaintiff alleged that the Ordinance violated article IX, section 2, of the Illinois Constitution (Ill. Const. 1970, art. IX, § 2), contending that "there is no reasonable basis in law or fact supporting the *** exemptions [granted therein] from a tax on amusements." The plaintiff again alleged that, by reason of the exemptions granted, the Ordinance violated the uniformity clause of the Illinois Constitution (count III) and the equal protection clauses of both the Illinois and the United States Constitutions (count IV). He did not replead the special legislation claim which appeared as count IV of his amended complaint. The County Defendants responded to the second amended complaint with a combined motion to dismiss pursuant to section 2—619.1 of the Code. They again asserted, under section 2—619, that the plaintiff lacked standing to challenge the constitutionality of the Ordinance and, pursuant to section 2—615, attacked the legal sufficiency of the plaintiff's constitutional claims.

On May 8, 1998, the trial court found that the plaintiff lacked standing to challenge the Ordinance on the theory that the not-for-profit exemption granted therein does not apply to amusements sponsored or conducted by all not-for-profit entities, but found that the plaintiff had standing to challenge the Ordinance on all of the other theories pled in his second amended complaint. Pursuant to the section 2—615 portion of the County Defendants' motion, the court dismissed the plaintiff's second amended complaint "with prejudice," finding that the exemptions granted in the Ordinance were reasonable, did not violate the uniformity clause of the Illinois Constitution, and did not constitute a denial of equal protection of the law. Thereafter, the plaintiff filed a timely notice of appeal from the trial court's orders of May 23, 1997, dismissing his occupational tax claim, and May 8, 1998, dismissing his remaining claims.

■ In urging affirmance, the County Defendants argue, as they did before the trial court, both that the Ordinance is constitutional and that the plaintiff lacks standing to challenge its constitutionality. As noted above, the trial court dismissed the plaintiff's action pursuant to the section 2—615 grounds asserted by the County Defendants in their motions to dismiss. However, as the prevailing parties below, the County Defendants may argue any point in support of the trial court's judgment that is supported by the record. *Shaw v. Lorenz*, 42 Ill. 2d 246, 248, 246 N.E.2d 285 (1969). As it is well settled and long established that courts will not go out of their way to pass upon the constitutionality of a legislative enactment when a case might be decided on other grounds (*Woodyatt v. Thompson*, 155 Ill. 451, 460-61, 40 N.E. 307 (1895)), we will commence our analysis with the issue of the plaintiff's standing.

In support of their contention that the plaintiff lacks standing to prosecute this action, the County Defendants make two arguments. As to the plaintiff's claim that the Ordinance is an unconstitutional occupation tax, they argue that only an amusement provider, and not a patron such as the plaintiff, has standing to challenge the Ordinance on this theory. Their argument seems to be based on the proposition that the Ordinance does not impose a tax on the "plaintiff's privilege to exercise his occupation (whatever that occupation may be)." As to the remaining claims, the County Defendants argue that the second amended complaint does not allege any facts that show the manner in which the plaintiff has been aggrieved by any of the exemptions granted in the Ordinance.

■ Lack of standing is an affirmative defense in Illinois (*Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 494, 524 N.E.2d 561 (1988)) and may appropriately be raised by way of a mo-

tion for involuntary dismissal under section 2—619 (*In re Custody of McCarthy*, 157 Ill. App. 3d 377, 380, 510 N.E.2d 555 (1987)). When lack of standing is raised by way of a section 2—619 motion, all well-pled facts in the plaintiff's complaint must be taken as true for purposes of ruling on the motion. See *Mayfield v. Acme Barrel Co.*, 258 Ill. App. 3d 32, 34, 629 N.E.2d 690 (1994). Our review of a trial court's disposition of a section 2—619 motion is *de novo. Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116, 619 N.E.2d 732 (1993).

■ As our supreme court held in *Greer*:

"[S]tanding in Illinois requires only some injury in fact to a legally cognizable interest. [Citation.] More precisely, the claimed injury, whether 'actual or threatened' [citation], must be: (1)'distinct and palpable' [citation]; (2) 'fairly traceable' to the defendant's actions [citation]; and (3) substantially likely to be prevented or redressed by the grant of the requested relief [citations]. In the context of an action for declaratory relief, there must be an actual controversy between adverse parties, with the party requesting the declaration possessing some personal claim, status, or right which is capable of being affected by the grant of such relief. [Citation.]" *Greer*, 122 Ill. 2d at 492-93.

■ In this case, there is nothing theoretical or hypothetical about the controversy between the plaintiff and the County. A simple reading of the Ordinance reveals that the tax imposed thereunder is "upon the patrons" and, although the Ordinance places the burden of collecting the tax upon the owner, manager, or operator of an amusement, it goes on to provide that their failure "to collect the tax shall not excuse or release the patron from the obligation to pay the tax." Cook County Amusement Tax Ordinance (amended March 18, 1997). The plaintiff alleged that, under protest, he paid the tax imposed by the Ordinance as part of a movie theater admission fee. Measured by the standard announced in *Greer*, we believe that the plaintiff has pled sufficient facts which, if taken as true, establish his standing to challenge the constitutionality of the Ordinance on any theory. See *Terry v. Metropolitan Pier & Exposition Authority*, 271 Ill. App. 3d 446, 451, 648 N.E.2d 1047 (1995).

Having determined that the plaintiff has standing to challenge the Ordinance, we will now address the propriety of the dismissal of the plaintiff's claims under section 2—615 of the Code.

■ The legal sufficiency of a complaint alleging that a statute or ordinance is unconstitutional may be raised by way of a section 2—615 motion. See *Terry*, 271 Ill. App. 3d at 450. A section 2—615 motion attacks only the legal sufficiency of the complaint. *Janes v. First Federal*

*Savings & Loan Ass'n*, 57 Ill. 2d 398, 406, 312 N.E.2d 605 (1974). It does not raise affirmative factual defenses, alleging instead only defects appearing on the face of the complaint. *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 484, 639 N.E.2d 1282 (1994). Consequently, the only matters to be considered in ruling on such a motion are the allegations set forth in the complaint under attack. Evidentiary material outside of the complaint may not be considered. *Urbaitis v. Commonwealth Edison*, 143 Ill. 2d 458, 475-76, 575 N.E.2d 548 (1991). In ruling on a section 2—615 motion, the court must take all well-pled facts in the complaint as true and draw all reasonable inferences from those facts which are favorable to the plaintiff. *Ziemba v. Mierzwa*, 142 Ill. 2d 42, 46-47, 566 N.E.2d 1365 (1991). However, conclusions of law or fact contained within the challenged pleading will not be taken as true unless supported by specific factual allegations. *Ziemba*, 142 Ill. 2d at 47. The only question presented by a section 2—615 motion to dismiss for failure to state a cause of action is whether sufficient facts are stated in the complaint which, if true, could entitle the plaintiff to relief. *Illinois Graphics Co.*, 159 Ill. 2d at 488. Since the question is one of law, our review of a dismissal pursuant to a section 2—615 motion is *de novo. T&S Signs, Inc. v. Village of Wadsworth*, 261 Ill. App. 3d 1080, 1084, 634 N.E.2d 306 (1994).

In urging the reversal of the trial court's order of May 23 1997, dismissing count I of his amended complaint (repled as count I of his second amended complaint in order to preserve the issue for appeal), the plaintiff argues that the Ordinance imposes an impermissible occupational tax in violation of section 6(e) of article VII of the Illinois Constitution, which provides in pertinent part: "A home rule unit shall have only the power that the General Assembly may provide by law *** to license for revenue or impose taxes upon or measured by income or earnings or upon occupations." Ill. Const. 1970, art. VII, § 6(e). However, the plaintiff's contention in this regard is in direct conflict with our supreme court's decisions in *Kerasotes Rialto Theater Corp. v. City of Peoria*, 77 Ill. 2d 491, 397 N.E.2d 790 (1979), and *Town of Cicero v. Fox Valley Trotting Club, Inc.*, 65 Ill. 2d 10, 23, 357 N.E.2d 1118 (1976)), both of which held that ordinances that impose a tax upon the privilege of witnessing an amusement are not taxes "upon occupations" within the meaning of section 6(e) of article VII of the Constitution. Nevertheless, the plaintiff argues that the subsequent decisions of the supreme court in *Commercial National Bank v. City of Chicago*, 89 Ill. 2d 45, 432 N.E.2d 227 (1982), *Waukegan Community Unit School District No. 60 v. City of Waukegan*, 95 Ill. 2d 244, 447 N.E.2d 345 (1983), and *Chicago Health Clubs, Inc. v. Picur*, 124 Ill. 2d 1, 528 N.E.2d 978 (1988), mandate a different result in this case. We disagree.

■ Article VII, section 6(a), of the Illinois Constitution confers broad taxing powers upon home rule units by providing: "Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power *** to tax ***." Ill. Const. 1970, art. VII, § 6(a). The taxing power of home rule units must be liberally construed (see Ill. Const. 1970, art. VII, § 6(m)), and any limitation on that power must be found within section 6 of article VII. *Commercial National Bank*, 89 Ill. 2d at 50.

Since the adoption of the 1970 Constitution, our supreme court has had occasion to rule on a number of cases challenging ordinances enacted by home rule units on the ground that they were invalid occupation taxes. Because the constitution does not define a tax "upon occupations," the supreme court has relied upon the debates of the delegates to the 1970 Illinois Constitutional Convention in an effort to determine the meaning of the phrase and the scope of the limitation on a home rule unit's taxing power. See *Commercial National Bank*, 89 Ill. 2d at 50-64; *Paper Supply Co. v. City of Chicago*, 57 Ill. 2d 553, 559-66, 317 N.E.2d 3 (1974)). In several of its earlier decisions upholding revenue ordinances enacted by home rule units, the supreme court found no violation of the constitutional proscription against occupation taxes either: (1) because the literal language of the ordinance placed the incidence of the tax upon the consumer or purchaser, without regard to the fact that the seller or provider may be obligated to act as a collection agent and may be subject to a penalty for failing to collect or remit the tax (see *S. Bloom, Inc. v. Korshak*, 52 Ill. 2d 56, 62-63, 284 N.E.2d 257 (1972)); or (2) because the ordinance did not impose a tax upon a "given occupation" (see *Paper Supply Co.*, 57 Ill. 2d at 566), notwithstanding that the burden of the tax may fall upon those engaged in occupations (see *Fox Valley Trotting Club*, 65 Ill. 2d at 23).

In *Commercial National Bank*, 89 Ill. 2d 45, 432 N.E.2d 227, the supreme court struck down a Chicago ordinance imposing a 1% tax on the purchase of services. Although the ordinance expressly imposed the tax on the purchaser, it placed collection and remittance duties upon the service provider, who was also liable for any uncollected taxes. Relying on the debates at the constitutional convention, the supreme court determined that the constitutional limitation on a home rule unit's ability to levy occupation taxes was intended to apply to taxes imposed upon the privilege of engaging in the business of selling services. *Commercial National Bank*, 89 Ill. 2d at 53-60. After declaring that the service tax was of a kind that the constitutional convention intended to come within the limitation of section 6(e) of

article VII, the supreme court held that a simple declaration in the ordinance that the tax was imposed upon the purchaser was insufficient to avoid the constitutional limitation when the practical effect and operation of the ordinance imposed upon the seller of services all of the legal obligations imposed upon the purchaser. *Commercial National Bank*, 89 Ill. 2d at 64-67. See also *Waukegan Community School District*, 95 Ill. 2d at 252-55; *Chicago Health Clubs*, 124 Ill. 2d at 9-12.

Based upon the holdings in *Commercial National Bank, Waukegan Community School District*, and *Chicago Health Clubs*, the plaintiff argues that the tax imposed by the Ordinance is an occupation tax. The flaw in the plaintiff's reasoning is twofold. First, he insists that the Ordinance imposes a service tax, refusing to accept the fact that the supreme court has found taxes imposed upon the privilege of witnessing amusements to be different in kind from the service taxes to which the constitutional limitation upon a home rule unit's taxing power was intended to apply. See *Commercial National Bank*, 89 Ill. 2d at 58-60, 63-64; *Illinois Gasoline Dealers Ass'n v. City of Chicago*, 119 Ill. 2d 391, 400-01, 519 N.E.2d 447 (1988). Second, he fails to take into consideration the factual distinctions between the Ordinance and the ordinances at issue in *Commercial National Bank, Waukegan Community School District*, and *Chicago Health Clubs* as they relate to liability for unpaid taxes. In those cases, not only did the subject ordinances require the service providers to collect the tax from the purchaser and impose penalties upon their failure to do so, they also rendered the providers liable for unpaid taxes. See *Commercial National Bank*, 89 Ill. 2d at 51; *Waukegan Community School District*, 95 Ill. 2d at 255; *Chicago Health Clubs*, 124 Ill. 2d at 10. While the Ordinance in this case requires amusement providers to act as tax collectors and imposes penalties in the event that they fail to do so, it does not make the providers liable for unpaid taxes and specifically states that "[t]he failure of the tax collector to collect the tax shall not excuse or release the patron from the obligation to pay the tax." Cook County Amusement Tax Ordinance (amended March 18, 1997).

■ ■ As noted earlier, the supreme court has twice found that amusement taxes are not the type of tax which the constitutional convention intended to deny to home rule units. Consequently, the factors to be considered in determining if the Ordinance imposes a tax "upon occupations" are whether it: (1) "regulates and controls a given occupation"; (2) "imposes a tax for the privilege of engaging in a given occupation, trade or profession"; or (3) "imposes a tax on the privilege of engaging in the business of selling services." *Illinois Gasoline Dealers Ass'n*, 119 Ill. 2d at 399. A simple reading of the Ordinance reveals

that it does not regulate or control any occupation. The tax imposed under the Ordinance is upon the privilege of witnessing an amusement, not upon any "given occupation" or upon "the privilege of engaging in the business of selling services." The Ordinance specifically places the incidence of the tax upon the patron, who is never relieved of liability for its payment. Further, it does not render the amusement provider liable for unpaid taxes. The fact that the amusement provider is required to collect the tax and is subject to penalties if it fails to do so does not shift the incidence of the tax from the patron to the provider. *Illinois Gasoline Dealers Ass'n*, 119 Ill. 2d at 399-401; *Kerasotes*, 77 Ill. 2d at 500; *S. Bloom*, 52 Ill. 2d at 62-63. Consequently, we find that the tax imposed under the Ordinance is not a tax "upon occupations" proscribed by section 6(e) of article VII of the Constitution. See also *Mr. B's, Inc. v. City of Chicago*, 302 Ill. App. 3d 930, 936-37, 706 N.E.2d 1001 (1998).

Having determined that the Ordinance does not impose a tax upon occupations, we affirm the trial court's order of May 23, 1997, dismissing the plaintiff's occupational tax challenge, and turn to the remaining constitutional challenges set forth in the plaintiff's second amended complaint, which were dismissed on May 8, 1998. As stated earlier, in counts II and III of his second amended complaint, the plaintiff asserted that certain of the exemptions granted in the Ordinance violate the uniformity clause of the Illinois Constitution. In count IV, the plaintiff raised an equal protection challenge under both the Illinois and United States Constitutions.

■ Equal protection analysis under the Illinois Constitution is essentially the same as under the United States Constitution. *In re A.A.*, 181 Ill. 2d 32, 36-37, 690 N.E.2d 980 (1998). The guarantee of equal protection is a general limitation (see *Searle Pharmaceuticals, Inc. v. Department of Revenue*, 117 Ill. 2d 454, 466, 512 N.E.2d 1240 (1987)) which requires that government deal similarly with similarly situated individuals (*In re A.A.*, 181 Ill. 2d at 37). Where economic legislation does not affect a suspect class or fundamental rights, there need only be a reasonable relationship between the challenged legislation and any conceivable governmental interest. *Jacobson v. Department of Public Aid*, 171 Ill. 2d 314, 323, 664 N.E.2d 1024 (1996); *Cutinello v. Whitley*, 161 Ill. 2d 409, 420, 641 N.E.2d 360 (1994). Although legislation may not accord different treatment to different classes of persons where the classifications are based on criteria wholly unrelated to the purpose of the legislation, the guarantee of equal protection does not forbid the drawing of proper distinctions among different categories of individuals. *In re A.A.*, 181 Ill. 2d at 37. Judicial review of a legislative classification under a rational basis analysis is limited and deferential.

The legislation carries a strong presumption of constitutionality, and, consequently, if there exists any reasonably conceivable set of facts that justifies the classification, it must be upheld. *Jacobson*, 171 Ill. 2d at 324. It is constitutionally irrelevant whether those were the facts upon which the legislature actually relied when enacting the legislation. *United States R.R. Retirement Board v. Fritz*, 449 U.S. 166, 179, 66 L. Ed. 2d 368, 378, 101 S. Ct. 453, 461 (1980). Whether a rational basis exists for a legislative classification is a question of law. *Jacobson*, 171 Ill. 2d at 323.

■ The uniformity clause of the Illinois Constitution provides: "In any law classifying the subjects or objects of non-property taxes or fees, the classes shall be reasonable and the subjects and objects within each class shall be taxed uniformly. Exemptions, deductions, credits, refunds and other allowances shall be reasonable." Ill. Const. 1970, art. IX, § 2. In order to satisfy the uniformity clause, the classification of the subjects or objects of and the exemptions from a nonproperty tax must be based on a real and substantial difference between those taxed and those not taxed and must bear some reasonable relationship to the object of the legislation containing the classification or to public policy. *Geja's Cafe v. Metropolitan Pier & Exposition Authority*, 153 Ill. 2d 239, 247, 606 N.E.2d 1212 (1992); *Searle Pharmaceuticals*, 117 Ill. 2d at 468. " '[T]he uniformity clause was designed to enforce *minimum standards of reasonableness and fairness* as between groups of taxpayers[ ]' ([e]mphasis added[ ])" (*Allegro Services, Ltd. v. Metropolitan Pier & Exposition Authority*, 172 Ill. 2d 243, 253, 665 N.E.2d 1246 (1996), quoting *Geja's Cafe*, 153 Ill. 2d at 252) and it imposes more stringent limitations than the equal protection clause on the authority of a legislative body to classify the subjects and objects of taxation (*Allegro Services*, 172 Ill. 2d at 249; *Geja's Cafe*, 153 Ill. 2d at 247). However, the scope of a court's inquiry in a challenge to legislation under the uniformity clause remains relatively narrow as statutes carry the presumption of validity, and broad latitude is granted to legislative classifications for taxing purposes. *Allegro Services*, 172 Ill. 2d at 250; *Geja's Cafe*, 153 Ill. 2d at 248.

■ Although the scope of a court's inquiry is essentially the same whether tax legislation is alleged to be in violation of the uniformity clause or the equal protection clause, the test to be employed in determining constitutionality differs. One who asserts that a legislative classification violates the guarantee of equal protection bears the burden of negating every conceivable basis that might support it. See *Searle Pharmaceuticals*, 117 Ill. 2d at 465. In contrast, when a uniformity clause challenge is made, "the opponent of a tax is not required to come forward with any and all conceivable explanations

for the tax and then prove each one to be unreasonable." *Allegro Services*, 172 Ill. 2d.at 255. When the opponent of the tax makes a "good-faith uniformity challenge, the taxing body bears the initial burden of producing a justification for the classifications." *Allegro Services*, 172 Ill. 2d at 255. Once the taxing body provides such a justification, the burden shifts to the opponent of the tax to persuade the court that the proffered justification is not supported by the facts. *Allegro Services*, 172 Ill. 2d at 255.

The uniformity clause encompasses the guarantee of equal protection and adds even more limitations on government. *Geja's Cafe*, 153 Ill. 2d at 247. Consequently, if a party challenging a tax fails to assert a "good-faith uniformity challenge," any equal protection challenge based upon the same factual allegations also fails to assert a valid claim for relief. See *Geja's Cafe*, 153 Ill. 2d at 247. However, because the burdens are different in an action alleging a violation of the uniformity clause as compared to one based upon the equal protection clause, the converse is not necessarily true. A complaint deemed insufficient to support an equal protection challenge may, nonetheless, be adequate to assert a uniformity clause challenge.

In this case, the trial court found that the allegations contained in the plaintiff's second amended complaint failed to state a claim based upon a violation of the uniformity clause and, therefore, the court did not separately address his equal protection claim. See *Allegro Services*, 172 Ill. 2d at 250. However, because of certain procedural difficulties that will be discussed later in this opinion, we will address the propriety of the trial court's dismissal of the plaintiff's equal protection challenge independently of our review of the dismissal of his claims under the uniformity clause.

Generally, the legislature may define a class that is subject to a specific tax and then exempt a subclass so long as there is some real and substantial difference between those taxed and those not taxed. *Klein v. Hulman*, 34 Ill. 2d 343, 346-47, 215 N.E.2d 268 (1966). This is particularly true when the exemption is based upon the character of an entity other than the one upon which the incidence of the tax has been placed. *Kerasotes*, 77 Ill. 2d at 496.

The Ordinance grants a number of exemptions. Rather than address each of these exemptions separately, we will place them into categories for ease of analysis. Into "Category I" we have placed amusements conducted by certain not-for-profit institutions, organizations, groups or societies, where no part of the net earnings inures to the benefit of any person. These include: religious, educational, and charitable institutions, societies or organizations; societies or organizations for the prevention of cruelty to children or animals; societies or

organizations conducted for the sole purpose of maintaining symphony orchestras, opera performances and artistic presentations, receiving substantial support from voluntary contributions; and societies or organizations conducted and maintained for the purpose of civic improvement. "Category II" consists of amusements sponsored not more often than twice yearly for periods not longer than 30 days by not-for-profit fraternal organizations, legion posts, social and political groups, with no part of the net earnings inuring to the benefit of any person. "Category III" amusements are those conducted by organizations or persons in the armed services of the United States, or National Guard organizations, reserve officers' associations, or organizations or posts of war veterans, or auxiliary units or societies of such posts or organizations, if such posts, organizations, units or societies are organized in the State of Illinois and if no part of their earnings inures to the benefit of any person. "Category IV" consists of amusements conducted by organizations or associations created and maintained for the purpose of benefiting the members, or dependents or heirs of members, of the police or fire departments of any political subdivision of the State of Illinois. "Category V" amusements are live performances of professional theater companies in any auditorium or theater in the County, whose maximum seating capacity, including all balconies, is not more than 750 patrons. We will address separately the exclusion of participatory activities, raffles, intertrack wagering facilities, and automatic amusement devices from the definition of amusements for purposes of the application of the Ordinance.

As stated earlier, so long as some set of facts can be reasonably conceived that would justify the exemptions granted in the Ordinance, the exemptions do not constitute a denial of equal protection of the law, even if those facts were not actually relied upon in enacting the Ordinance. *Cutinello*, 161 Ill. 2d at 420. Our supreme court has, on a number of occasions, upheld tax exemptions based upon the character of an entity other than that upon which the incidence of a tax has been placed. In *Kerasotes*, the court held that exemptions in an amusement tax ordinance based upon the nature of the entity to which the proceeds of the amusement inure are not objectionable if reasonable. *Kerasotes*, 77 Ill. 2d at 497. Governmental and nongovernmental organizations the purpose of which is to serve, benefit, and improve the community in general are sufficiently different from traditional commercial enterprises to constitute a rational basis for the exemption of their patrons from an amusement tax. *Kerasotes*, 77 Ill. 2d at 497. Specifically, the supreme court in *Kerasotes* upheld exemptions identical or very similar to those granted in the Ordinance and identified herein as Category I exemptions. *Kerasotes*, 77 Ill. 2d at 494-98.

■ As with the exemptions contained within Category I, the noncommercial character of the not-for-profit organizations included within Category II forms a reasonable basis for the granting of an exemption. However, since these entities are less beneficial to society as a whole than those enumerated within Category I, the exemption is not as all encompassing as that which is granted to Category I entities. As for the distinction between entities described within Category II which sponsor amusements not more often than twice yearly for periods not longer than 30 days and those which sponsor amusements more frequently or for longer periods of time, considerations of administrative convenience and expense of collection provide a reasonable justification for a separate classification. The expenses incurred in the collection of a tax as compared to the revenue to be derived provides a rational basis for the granting of an exemption. The size of an entity often marks the difference between being taxed and not being taxed. *Paper Supply Co.*, 57 Ill. 2d at 574-75. The same rationale supplies a justification for exempting the patrons of entities that engage in an activity infrequently or for very limited periods of time. See *Williams v. City of Chicago*, 66 Ill. 2d 423, 435, 362 N.E.2d 1030 (1977). The nature of the entities described within Category II, coupled with administrative convenience, could reasonably warrant the granting of an exemption only to patrons of those described entities which sponsor amusement activities infrequently and for very limited periods of time.

■ As the Supreme Court noted in *Kerasotes*, it is not uncommon for individuals to attend functions sponsored by certain organizations not only for the purpose of entertainment but also for the purpose of supporting the sponsoring organization. *Kerasotes*, 77 Ill. 2d at 497-98. The County's possible belief that many patrons of amusements conducted by military or veterans organizations, as described in Category III, are so motivated furnishes a sufficient justification for granting an exemption to those patrons. See *Kerasotes*, 77 Ill. 2d at 497.

■ Certain organizations and associations perform functions, render services, and defer expenses that units of government might otherwise be called upon to perform, render, or defer. Granting tax exemptions to the patrons of these types of entities has been found to be reasonable based upon the theory that relieving these organizations of the burdens of tax collection and record keeping frees more funds for use in the discharge of their beneficent purposes, thus relieving units of government of a potential financial burden. See *Kerasotes*, 77 Ill. 2d at 498. We believe this rationale justifies the exemptions contained in Category IV. An exemption for patrons of organizations benefiting only police officers, firemen, and their dependents and heirs

is further justified in light of the dangers inherent in police and fire service.

■■■ Unlike the exemption granted in Category I to symphony orchestras, opera performances, and artistic presentations, Category V exemptions do not depend upon the not-for-profit status of the sponsoring entity. Nonetheless, live performances of professional theater companies advance the cultural interests of the community. This interest, coupled with cost/benefit considerations, supplies a reasonable justification for exempting the patrons of live performances of professional theater companies in any auditorium or theater whose maximum seating capacity is not more than 750 from the tax imposed under the Ordinance. See *Kerasotes*, 77 Ill. 2d at 494-98.

We now turn our attention to the portion of the Ordinance that excludes from the definition of an amusement participatory activities, raffles, intertrack wagering facilities, and automatic amusement devices.

■■■ Participatory activities are different in kind from purely passive entertainment. This distinction is sufficient to form a reasonable basis for the exclusion of such activities from the Ordinance's definition of an amusement. The exclusion of automatic amusement devices from the definition of an amusement under the Ordinance is reasonable for several reasons. First, the playing of an automatic amusement device is essentially a participatory activity, the exclusion of which, we have already concluded, is reasonable. Further, the County may well have reasoned that the expenses incurred in the collection of the tax from the users of such devices as compared to the revenue to be derived is unwarranted in light of the relatively small cost to operate such devices.

As the County Defendants correctly argue, raffles, by statute, may only be conducted by not-for-profit organizations where no part of the profits inures to the benefit of any person. See 230 ILCS 15/0.01 *et seq.* (West 1996). Consequently, the exclusion of raffles from the definition of an amusement is reasonable for the same reasons that the granting of Category I exemptions is reasonable. Section 27(f) of the Illinois Horse Racing Act of 1975 (230 ILCS 5/27(f) (West 1996)) prohibits municipalities and counties from imposing an admission fee in excess of $1.00 per admission to an intertrack wagering facility located within its boundaries. The exclusion of such facilities from the definition of an amusement under the Ordinance ensures the County's compliance with this statutory prohibition and is, therefore, reasonable.

■■■ As demonstrated, reasonably conceivable facts exist to justify each of the exclusions and exemptions addressed in the plaintiff's

second amended complaint. Consequently, the plaintiff failed to assert a valid equal protection challenge to the Ordinance under either the Illinois or United States Constitution, and count IV of his second amended complaint was properly dismissed. We turn next to the dismissal of the uniformity clause challenges to the Ordinance asserted by the plaintiff in counts II and III of his second amended complaint.

 In his reply brief, the plaintiff argues that, because he made good-faith uniformity clause challenges to the Ordinance, the claims should not have been disposed of on the pleadings. As noted earlier, when the opponent of a tax raises a good-faith uniformity clause challenge to a tax exemption or exclusion, the taxing body bears the initial burden of producing a justification for the tax. In such a circumstance, a section 2—615 motion is generally an inappropriate vehicle to be used in attacking the plaintiff's complaint since the motion is directed to the facts set forth in the complaint and the only matters to be considered are the facts alleged therein. *Illinois Graphics Co.*, 159 Ill. 2d at 484-85. The movant may not submit any new or additional facts for the court's consideration in ruling on such a motion. *Mutual Tobacco Co. v. Halpin*, 414 Ill. 226, 231, 111 N.E.2d 155 (1953). Consequently, if a taxing body is required to rely on factual matters outside of the complaint to establish a justification for a tax classification, a motion for summary judgment brought pursuant to section 2—1005 of the Code (735 ILCS 5/2—1005 (West 1996)) is more suited to the task. See *Allegro Services*, 172 Ill. 2d at 249; *Geja's Cafe*, 153 Ill. 2d at 245; *Illinois Gasoline Dealers Ass'n*, 119 Ill. 2d at 394. That is not to say, however, that a section 2—615 motion could never be appropriate. When the reasonableness of a tax classification is determinable as a matter of law, a uniformity challenge may be decided in the context of a section 2—615 motion. See *Terry*, 271 Ill. App. 3d at 453-55.

 In this case, we have little difficulty in determining that certain of the exemptions and exclusions granted under the Ordinance are reasonable as a matter of law. Entities such as are included within Categories I and IV are not commercial enterprises but are organizations intended to serve, benefit, and improve the community in general. This distinction alone is sufficient to constitute a reasonable basis for exempting their patrons from the tax imposed under the Ordinance. See *Kerasotes*, 77 Ill. 2d at 497. The exclusion of raffles and intertrack wagering facilities from the definition of an amusement under the Ordinance is reasonable for the same reasons we discussed in analyzing the plaintiff's equal protection challenge. Participatory activities and the operation of amusement devices are so fundamentally different in kind from purely passive entertainment that excluding

such activities and devices from the definition of an amusement under the Ordinance is not arbitrary or unreasonable as a matter of law. Consequently, we hold that the plaintiff failed to make a good-faith uniformity clause challenge to the exclusion of participatory activities, raffles, intertrack wagering facilities, and automatic amusement devices from the Ordinance's definition of an amusement or to Category I and IV exemptions. We cannot say the same about Category II, III, and V exemptions.

As discussed in the context of the plaintiff's equal protection challenge, it is conceivable that administrative and cost/benefit considerations can prompt a taxing authority to exempt certain individuals and entities from a tax. Whether the size of an entertainment facility or the frequency with which an entity offers amusement activities justifies an exemption under any given set of circumstances is essentially a factual question. Since, in response to the plaintiff's uniformity clause challenge, the County Defendants had the initial burden of offering a factual justification for Category II and V exemptions, it was incumbent upon them to present some facts which, if true, would justify the exemptions for administrative or financial reasons. This they did not do. Although our ability to conceive of such reasons is sufficient to defeat an equal protection challenge, it is insufficient to defeat a uniformity clause challenge due to the difference in burden allocation. *Searle Pharmaceuticals*, 117 Ill. 2d at 465-69. For this reason, we believe that the trial court erred in dismissing the plaintiff's uniformity clause challenge to the Ordinance based upon the exemptions granted to the patrons of Category II and V entities. The same is true of the dismissal of the plaintiff's uniformity clause challenges to the exemption of patrons of Category III entities. It is conceivable that the County exempted the patrons of amusements sponsored by military and veterans organizations from the tax imposed under the Ordinance, reasoning that many of them attend such functions not only for the purpose of entertainment, but for the purpose of supporting the organization presenting the amusement. Whether such an assumption is true is a factual question. See *Kerasotes*, 77 Ill. 2d at 497-98. Consequently, it was the burden of the County Defendants to submit evidence in support of such a justification, which they did not and could not do in the context of a section 2—615 motion.

In summary, we: affirm the dismissal of the plaintiff's occupational tax claim set forth in count I of his amended complaint and repled as count I of his second amended complaint; affirm the dismissal of the plaintiff's equal protection challenge set forth in count IV of his second amended complaint; affirm the dismissal of the plaintiff's uniformity clause challenges set forth in counts II and III of his second amended

complaint as they relate to the exemptions granted under section 3A, subsections (1), (2), (3), (4), and (7) of the Ordinance and the exclusion of participatory activities, raffles, intertrack wagering facilities, and amusement devices from the definition of an amusement under the Ordinance; and reverse the dismissal of the plaintiff's uniformity clause challenges set forth in counts II and III of his second amended complaint as they relate to the exemptions granted under section 3A, subsections (5) and (6), and section 3B(1) of the Ordinance. This cause is remanded to the circuit court for further proceedings consistent with this opinion.

Affirmed in part and reversed in part; cause remanded.

SOUTH, P.J., and HALL, J., concur.