REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT

CHARLETTE WORTHAM,

  Plaintiff-Appellant,

v.

THE CITY OF CHICAGO DEPARTMENT OF ADMINISTRATIVE
HEARINGS, and CHICAGO ANIMAL CARE AND CONTROL,

  Defendants-Appellees.

No. 1-13-1735

Appellate Court of Illinois
First District, Fifth Division

May 1, 2015

JUSTICE PALMER delivered the judgment of the court, with opinion.
Justices McBride and Reyes concurred in the judgment and opinion.

Appeal from the Circuit Court of Cook County.

For APPELLANT: Law Offices of Tracy McGonigle, of Woodstock (Tracy McGonigle, of counsel)

For APPELLEE: Stephen R. Patton, Corporation Counsel of the City of Chicago (Benne Ruth Solomon, Deputy Corporation Counsel, Myriam Zreczny Kasper, Chief Assistant Corporation Counsel, and Julian N. Henriques, Jr., Senior Counsel, of counsel).

FIFTH DIVISION
May 1, 2015

No. 1-13-1735

| | | |
|---|---|---|
| CHARLETTE WORTHAM, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 12 M1 450418 |
| | ) | |
| THE CITY OF CHICAGO DEPARTMENT OF | ) | Honorable |
| ADMINISTRATIVE HEARINGS, and CHICAGO | ) | Mark Ballard, |
| ANIMAL CARE AND CONTROL, | ) | Judge Presiding. |
| | ) | |
| Defendants-Appellees. | ) | |

JUSTICE PALMER delivered the judgment of the court, with opinion
Justices McBride and Reyes concurred in the judgment and opinion.

OPINION

¶1 This is an administrative review action. Following a hearing, the City of Chicago department of administrative hearings (the Department) found that three Rottweilers owned by plaintiff, Charlette Wortham, were "dangerous animals" under section 7-12-020 of Municipal Code of Chicago (the Code) (Chicago Municipal Code § 7-12-020 (amended Nov. 19, 2008). Under that section, a dangerous animal is "any animal which bites, inflicts injury on, kills or otherwise attacks a human being or domestic animal without provocation on any public or private property." *Id*. Plaintiff sought administrative review in the circuit court of Cook County, which affirmed the Department's judgment. Plaintiff now appeals.

¶2 Following an incident between her three Rottweilers and a pit bull owned by John Young

on January 11, 2012, plaintiff received a letter of determination from the executive director of the City's department of animal care and control (DACC) that her dogs were "dangerous animals." On June 26, 2012, the Department held a hearing regarding that determination before an administrative law judge (ALJ). Plaintiff appeared at the hearing *pro se*. The following evidence was presented at that hearing.

¶3 John Young testified that on January 11, 2012, he was in an unfenced portion of his yard with his unleashed pit bull, Brandy. Young saw plaintiff walking four leashed Rottweilers down the street and shortly thereafter he noticed that three of those dogs had broken away from plaintiff and were dragging their leashes on the ground. The three Rottweilers ran into his yard and attacked Brandy by biting her tail and body. Young's daughter then came out of the house and helped him pull the Rottweilers off of Brandy. Brandy's tail was almost bitten off and she had bite marks on her upper thigh. Young took Brandy to a veterinarian and spent over $2,500 for treatment. Young's daughter, Cashara, testified that she saw the Rottweilers attacking Brandy after she came out of the house and she assisted in pulling the Rottweilers off of Brandy.

¶4 J. Franklin executed an affidavit that was admitted into evidence without objection. Franklin stated in his affidavit that he drove by the Young residence and saw three Rottweilers who were being walked by a woman break away from the woman, run into Young's yard, and attack a pit bull.

¶5 Chicago police officer Ruben Orta testified that he went to the Young residence on January 11, 2012, after he was assigned to investigate the above dog-biting incident. Officer Orta spoke to Young, who told him that plaintiff's dogs were on the leash when Brandy "ran up to" the Rottweilers on the sidewalk in front of Young's property. The dogs then got into a fight. Officer Orta also testified that he did not think plaintiff was able to control all four of her leashed

dogs because of their massive size, but he acknowledged that plaintiff's dogs were under control after the incident during Officer Orta's conversation with plaintiff.

¶6      Vanessa Thigpen testified about a prior dog-bite incident involving her Pomeranian mix, King, and one of plaintiff's Rottweilers. Specifically, Thigpen testified that on July 31, 2011, she drove with her dog and two passengers to a friend's house. After she parked the vehicle, one of her passengers opened the rear door on the passenger side, whereupon the biggest of the four Rottweilers, Hugo, ran over and bit King. Plaintiff had Hugo on the leash when Thigpen first saw Hugo, but Hugo was able to break free from the leash. Thigpen also testified that King had three teeth bites in him according to the examination conducted by his veterinarian.

¶7      Alan Holcomb, an investigator with the DACC, investigated plaintiff's case and made the determination that plaintiff's Rottweilers Hugo, Moo Moo, and Thumbelina were dangerous animals. In investigating the incident, Holcomb spoke with plaintiff, Young, Young's daughter, J. Franklin, and Officer Orta. Holcomb acknowledged that he did not speak with Officer Orta until after he determined that plaintiff's dogs were dangerous animals. Officer Orta told Holcomb that he had spoken with Young and that Young said it was "his fault" and that his "dog was off the leash." Holcomb further testified that he learned about the incident involving King and Hugo during his investigation of the Brandy incident.

¶8      John Wood testified that, on January 11, 2012, he witnessed the incident between the Rottweilers and the pit bull from his front porch. Wood's house is across the street and three houses down from Young's house. According to Wood, plaintiff was walking her Rottweilers on the sidewalk bordering Young's yard when Brandy "ran up" and "approached" the Rottweilers, at which point the Rottweilers "got off [the] leash." Wood characterized Brandy as "aggressive" and believed that the Rottweilers were "attacking because the pit bull was the aggressor." Wood

also testified that plaintiff "dropped" the leash when Brandy approached her dogs and that the "pit bull bit first."

¶9 Plaintiff testified on her own behalf that Brandy, who was unleashed, charged plaintiff's Rottweilers and bit them. She further testified that Brandy bit Moo Moo, but not Hugo. Although plaintiff admitted that, in the prior incident on July 31, 2011, her Rottweiler Hugo broke away from her and attacked King, she testified that King was barking at Hugo before the incident. Plaintiff was asked if her dogs had been involved in any dog-bite incidents other than those involving Brandy and King, and she responded that it was "not relevant" to the case but that she "did have an incident with my dog." When asked to describe the incident, plaintiff responded, "I won't answer."

¶10 Plaintiff was previously asked by the DACC to write a statement detailing the incident. That statement, which was admitted into evidence, stated that Hugo and Moo Moo fought Brandy instinctively to defend themselves in response to Brandy's engagement. In addition, Thumbelina did not bite Brandy.

¶11 Besides the above testimony, written statements from plaintiff's veterinarian and 20 residents from plaintiff's neighborhood were admitted into evidence. The veterinarian stated that the three Rottweilers had never shown aggression or exhibited vicious behavior to him or to his staff. The 20 statements essentially stated that they had seen plaintiff with her dogs and that she was able to control them.

¶12 The ALJ affirmed the determination that the three Rottweilers were dangerous animals under the Code. The ALJ stated that, despite the letters from residents of plaintiff's neighborhood, the ALJ did not believe plaintiff could control her dogs, who "attacked at least two animals." While plaintiff "refused to answer [questions about] a possible third attack on an

*** animal," the ALJ stated that plaintiff's dogs "did attack Brandy" and "did attack King." The ALJ ordered plaintiff to comply with sections 7-12-050(c)(1) through (6) and (c)(8) of the Code. Those sections require the owner to keep the dangerous animal in a way that prevents them from attacking human beings and other animals in the future, which includes installation of identifying chip and sterilization. Chicago Municipal Code § 7-12-050(c)(1)-(6) (amended Mar. 14, 2007). Plaintiff thereafter sought review in the circuit court of Cook County, which affirmed the ALJ's decision. Plaintiff now appeals.

¶13     On appeal, this court's role is to review the administrative decision rather than the circuit court's decision. *Express Valet, Inc. v. City of Chicago*, 373 Ill. App. 3d 838, 847 (2007). For any given issue, the appropriate standard of review, which reflects the level of deference we afford the administrative agency, depends on whether the issue is one of fact, one of law, or a mixed question of law and fact. *Id*. An agency's findings of fact are deemed *prima facie* true and correct and will not be overturned unless they are against the manifest weight of the evidence. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210 (2008). An agency's factual findings are against the manifest weight of the evidence "if the opposite conclusion is clearly evident." *Id*. An agency's decision on a question of law, however, is not binding on a reviewing court and is reviewed *de novo*. *Id*. An agency's ruling on a mixed question of law and fact—a question in which the historical facts are admitted, the rule of law is undisputed, and the only question is whether the facts satisfy a statutory standard with which the agency has expertise—will not be disturbed unless clearly erroneous. *Id*. at 211. Under this standard, we afford some deference to the agency's experience and expertise and we must accept the agency's finding unless after reviewing the record we are left with the " 'definite and firm conviction that a mistake has been committed.' " *AFM Messenger Service, Inc. v. Department of*

*Employment Security*, 198 Ill. 2d 380, 391-95 (2001) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

¶14     Plaintiff first contends that the ALJ erred in finding that the defense of provocation was not available in cases where a dog provokes another dog. Plaintiff claims that provocation should be extended to include cases where one dog provokes another, which she asserts happened in this case. Plaintiff reasons that it would be absurd to interpret the statutory language to mean that a dog could not provoke another dog because such interpretation is contrary to common sense and practical experience.

¶15     The City responds that plaintiff forfeited this issue because she did not raise it during the administrative hearing. "It is quite established that if an argument, issue, or defense is not presented in an administrative hearing, it is procedurally defaulted and may not be raised for the first time before the circuit court on administrative review." *Cinkus*, 228 Ill. 2d at 212-13. Our review of record establishes that plaintiff never argued during the administrative hearing that the defense of provocation should be extended to situations where one dog provokes another. Therefore, the argument is forfeited and cannot be raised on appeal.

¶16     Forfeiture aside, plaintiff's argument has no merit. The question of whether provocation applies to situations in which one animal provokes another requires an interpretation of the Code, which is a question of law that we review *de novo*. See *Cinkus*, 228 Ill. 2d at 211. The rules of statutory construction apply to municipal ordinances. *LeCompte v. Zoning Board of Appeals*, 2011 IL App (1st) 100423, ¶ 22. When the language of an ordinance is clear and unambiguous, reviewing courts should not depart from the plain language and meaning of the municipal ordinance by reading into it exceptions, limitations or conditions that the legislature did not express. *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 189 (1990).

¶17 Section 7-12-020 of the Code sets out five criteria under which an animal can be found to be a "dangerous animal." As relevant to this case and as previously noted, a dangerous animal is defined as "[an] animal which bites, inflicts injury on, kills or otherwise attacks a human being or domestic animal *without provocation* on any public or private property." (Emphasis added) Chicago Municipal Code § 7-12-020 (amended Nov. 19, 2008). The Code defines "provocation" in the following manner:

> " 'provocation' means that the threat, injury or damage caused by the animal was sustained *by a person* who, at the time, was committing a willful trespass or other tort upon the premises occupied by the owner of the animal, or was tormenting, abusing, or assaulting the animal, or was committing or attempting to commit a crime." (Emphasis added.) Chicago Municipal Code § 7-12-020 (amended Nov. 19, 2008).

¶18 In this case, the plain language of the Code clearly limits provocation to situations where "a person" provokes a dog. Had the city council intended the defense to be available when an animal provokes another animal, it could have done so by adding the phrase "by a person *or animal*" to the definition of provocation. However, the city council did not do so. Additionally, plaintiff does not cite any legislative history indicating that the defense of "provocation" was intended to apply to the situation where an animal provokes another animal. Therefore, since the language of the ordinance is clear and unambiguous, we will not depart from it in order to expand the meaning of provocation to the situation where a dog provokes another dog. See *Kraft,* 138 Ill. 2d at 189.

¶19 Plaintiff next contends that she was deprived of her fundamental right to due process of law when the ALJ allowed Thigpen to testify about the incident between Hugo and King. Plaintiff claims that Thigpen's testimony was irrelevant and prejudicial. Plaintiff further claims

that allowing Thigpen to testify violated plaintiff's right to confront and cross-examine the witness against her.

¶20    The City responds that plaintiff forfeited this argument because she did not object to Thigpen testifying during the administrative hearing. Our review of record shows that Thigpen testified about the incident between Hugo and King without objection from plaintiff. Therefore, plaintiff has forfeited her challenge to Thigpen's testimony.

¶21    Plaintiff's argument is meritless even if it was not forfeited. Whether one is deprived of fundamental right to due process is a question of law, which is reviewed *de novo*. *Buckner v. University Park Police Pension Fund*, 2013 IL App (3d) 120231, ¶ 21. Procedural due process in an administrative proceeding does not require a proceeding in the nature of a judicial proceeding. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 92 (1992). However, a reviewing court has a duty to examine the procedural methods employed at the administrative hearing to ensure that a fair and impartial procedure was used. *Id*. at 92-93. A fair hearing before an administrative agency includes the right to cross-examine adverse witnesses and impartiality in ruling upon the evidence. *Id*.

¶22    In this case, section 7-12-050 of the Code authorizes the executive director of DACC to determine whether a particular animal "*is* a dangerous animal," rather than whether it was a dangerous animal at one specific moment in the past. The determination of whether an animal is a "dangerous animal," therefore, depends on all of this animal's behaviors rather than the animal's behavior in one particular instance. This is the reason that plaintiff was allowed to submit letters into evidence from her veterinarian and residents in her neighborhood attesting to the dogs' behavior and plaintiff's ability to control her dogs. Thus, the incident involving Hugo and King was relevant to the determination of whether Hugo was a dangerous animal, and its

consideration by the ALJ did not deprive plaintiff of her right of a fair hearing. Furthermore, during the administrative hearing, plaintiff had the chance to cross-examine Thigpen but chose not to do so. Therefore, plaintiff was not denied her right to cross-examine the witnesses against her.

¶23    Plaintiff claims that the ALJ made an improper reference to a possible third incident involving her dogs. However, our review of record shows that the ALJ did not rely upon the incident in coming to his determination.

¶24    Plaintiff also claims that Thigpen's testimony was prejudicial because the ALJ relied upon it to conclude that all three of plaintiff's dogs were dangerous animals even though Thigpen's testimony only indicated that Hugo was involved in the King incident. Plaintiff specifically references the ALJ's statement about her three dogs that "they attacked at least two animals." Plaintiff has forfeited this claim as well because she failed to object when the ALJ made the above statement when announcing his decision. See *Pesoli v. Department of Employment Security*, 2012 IL App (1st) 111835. Moreover, the focus of the administrative hearing was on the incident between plaintiff's dogs and Young's pit bull, and the evidence about that incident was sufficient to uphold the ALJ's determination that all three of plaintiff's dogs were dangerous animals.

¶25    For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶26    Affirmed.