2025 IL App (1st) 240229
No. 1-24-0229
Opinion filed June 13, 2025

Sixth Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | |
|---|---|
| SAM'S WEST, INC., d/b/a Sam's Club #6358,<br><br>    Plaintiff-Appellee,<br><br>    v.<br><br>THE COUNTY OF COOK, THE COOK COUNTY DEPARTMENT OF REVENUE, KENNETH HARRIS, as Interim Director of the Cook County Department of Revenue, and THE COOK COUNTY DEPARTMENT OF ADMINISTRATIVE HEARINGS,<br><br>    Defendants-Appellants. | Appeal from the Circuit Court of Cook County.<br><br>No. 21 L 50523<br><br>The Honorable Patrick Stanton Judge, presiding. |

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Presiding Justice Tailor and Justice C.A. Walker concurred in the judgment and opinion.

**OPINION**

¶ 1        We decide whether the Cook County Tobacco Tax Ordinance excludes out-of-county retailers from the tax when they buy and take possession of cigarettes in Cook County rather than having them delivered to their out-of-county location.

¶ 2        The Ordinance mandates that wholesale cigarette dealers buy and affix county tax stamps to cigarette packages sold in the county. Cook County Ordinance No. 16-2190, § 74-433(b)

(approved May 11, 2016). The Ordinance prohibits wholesalers and retail tobacco dealers in Cook County from absorbing the tax, which ultimately consumers pay. *Id.* § 74-433(a).

¶ 3        Sam's Club West, Inc., d/b/a Sam's Club #6358, sold cigarettes to out-of-county retailers without County tax stamps. After a 1993 audit, the Cook County Department of Revenue did not assess Sam's Club for those sales, and Sam's Club continued its practice. But, during a 2016 audit, the Department informed Sam's Club that it should have been paying taxes on these sales. The Department assessed more than $310 million in unpaid taxes, interest, and penalties. Sam's Club contested the assessment, arguing that (i) out-of-county buyers were excluded from the tax under the plain language of the Ordinance and, alternatively, (ii) that the Ordinance was an unconstitutional occupation and extraterritorial tax, (iii) violated due process, and (iv) conflicted with the Cigarette Tax Act (35 ILCS 130/1 *et seq.* (West 2022)).

¶ 4        An administrative law judge (ALJ) upheld the assessment. The ALJ found that assessments are presumed *prima facie* correct and that Sam's Club failed to present evidence to refute the assessment. The ALJ also determined that the Ordinance was ambiguous. Although Sam's Club's interpretation was plausible, the ALJ deferred to the Department's "defensible" interpretation that the tax applied to all cigarette sales occurring in Cook County, including to out-of-county retailers.

¶ 5        On administrative review, the circuit court reversed, concluding that the Ordinance unambiguously "carve[d] out" sales to retailers that possess cigarettes for sale in Cook County and sell them elsewhere. The circuit court said its interpretation aligned with the intent of the Ordinance to discourage smoking by Cook County residents. It also said that imposing the tax would likely constitute an unconstitutional occupation tax.

¶ 6        We disagree and reverse. Under the Ordinance, the out-of-county retailers were "Purchasers," a term defined in the Ordinance. Cook County Ordinance No. 16-2190, § 74-431 (approved May 11, 2016). As a wholesale tobacco dealer, Sam's Club was obligated to collect taxes whenever "Purchasers" bought and took possession of the cigarettes in Cook County. Moreover, the Ordinance is neither an unconstitutional occupation or extraterritorial tax, nor did the assessment violate due process or conflict with the Cigarette Tax Act.

¶ 7                                    Background

¶ 8        Cook County has a use tax on cigarettes under its home-rule authority. (The State imposes a separate tax under the Cigarette Tax Act.) The Ordinance imposes a tax on "all cigarettes possessed for sale and upon the use of all cigarettes within the County of Cook." *Id.* § 74-433(a). The Ordinance specifies that "[u]se" "shall not include possession for sale by a retail tobacco dealer, retail cigarette manufacturer or wholesale tobacco dealer." *Id.* § 74-431.

¶ 9        The County collects the tax through the sale of tax stamps. The Department of Revenue sells tax stamps to the first licensed cigarette distributor delivering cigarettes in Cook County. Before delivery, the distributor must purchase and affix a stamp to each cigarette package. *Id.* § 74-433(b). Absent an exemption, a wholesale tobacco dealer collects the tax from any "Purchaser" who buys cigarettes in Cook County. *Id.* § 74-433(f). "Purchaser," under the Ordinance, means "a buyer of cigarettes, Other Tobacco Products, or Consumable Products, including, but not limited to, retail tobacco dealers, retail cigarette manufacturers and/or consumers." *Id.* § 74-431. Retail tobacco dealers and retail cigarette manufacturers collect the tax from any "consumer" who buys cigarettes in Cook County. *Id.* § 74-433(f).

¶ 10       A violation of the Ordinance, relevant here, occurs when anyone in the chain fails to incorporate the tax into the cigarettes' sales price. *Id.* § 74-433(h). The Ordinance does allow

for tax-free sales by Cook County wholesale tobacco dealers when they deliver the cigarettes to retailers from outside of Cook County. Cook County Ordinance No. 15-6025, § 74-434(b) (approved Nov. 18, 2015).

¶ 11                                                    Sam's Club

¶ 12       Sam's Club West sold cigarettes in Cook County. Sam's Club procured cigarettes from McLane Midwest, Inc., d/b/a McLane Midwest (McLane), which, unlike Sam's Club, has a license to affix tax stamps to cigarettes. Some of the cigarettes Sam's Club purchased from McLane had Cook County and Illinois tax stamps; others had only the Illinois stamp. Sam's Club sold to retail consumers and retailers located in Cook County with cigarette tax stamps from both Cook County and Illinois. Its sales to retailers operating outside of Cook County had the Illinois tax stamp only. This case concerns these sales.

¶ 13                                                    1993 Audit

¶ 14       In 1993, the Department audited Sam's Club's cigarette sales. After an initial proposed assessment, Sam's Club provided evidence that some cigarette sales for which they were taxed were to retailers that operated outside Cook County. The Department issued an updated assessment excluding those sales.

¶ 15       Going forward, Sam's Club continued selling cigarettes without Cook County taxes to out-of-county retailers. The stores adopted their own procedures to ensure that the Cook County tax would not be collected from out-of-county retailers. Specifically, Sam's Club required the out-of-county retailers to provide several state-issued documents showing registration as a cigarette retailer in Illinois. Sam's Club's parent company, Walmart, reviewed the documents to assess the out-of-county retailers' eligibility to purchase without the Cook County tax.

Sam's Club entered the approved retailers into its computer system and sold them cigarettes without the Cook County tax stamp.

¶ 16    Department auditors inspected Sam's Club stores over the next several years without issuing citations for sales of unstamped cigarettes to out-of-county retailers.

¶ 17                                    2016 Audit

¶ 18    In 2016, during a routine audit of Sam's Club and McLane, the Department informed Sam's Club that the tobacco tax applied to all sales in Cook County, including to out-of-county retailers. Sam's Club immediately stopped selling tax-free cigarettes to those retailers, and the retailers stopped purchasing cigarettes at Sam's Club's Cook County stores.

¶ 19    After the audit, the Department imposed assessments on 11 Sam's Club stores and McLane from January 1, 2009, through May 31, 2016. McLane entered into a settlement agreement with the Department and was dismissed. The Department issued revised assessments to Sam's Club, subtracting McLane's settlement amount and some sales exempt under the Ordinance. This resulted in a revised assessment of over $314 million, including a 10% late fee, a 25% penalty, and accrued interest.

¶ 20    Sam's Club protested the revised assessment. After a seven-day hearing, an ALJ upheld the assessment, finding that "Sam's Club did not rebut [the Department's] *prima facie* case regarding their tax liability." Noting that section 74-433(a) requires "possession" and "use" of cigarettes for the tax to apply, and citing the Illinois Supreme Court's decision in *Bloom, Inc. v. Korshak*, 52 Ill. 2d 56 (1972), the ALJ held that the Department properly imposed the Tax because Sam's Club had "possession" of the cigarettes for sale in Cook County and the out-of-county retailers received them in Cook County, which constitutes "use."

¶ 21    The ALJ rejected Sam's Club's argument that the tax was not due if a retailer provided a non-Cook County address because, notwithstanding the address, the Ordinance presumes that cigarettes are consumed where received, and the out-of-county retailers received them in Cook County. Without this presumption, "enforcement of the Ordinance would be impossible." The ALJ found no conflict between the Ordinance and the Cigarette Tax Act because the latter was designed to stop smuggling and expressed no intent to override home rule authority.

¶ 22    The ALJ imposed no penalties because Sam's Club's interpretation of the Ordinance was "plausible" and "led to their good faith practice of not collecting and remitting the taxes. Sam's Club developed and implemented systematic and extensive procedures in their attempt to comply with their interpretation of the Ordinance." The ALJ stated that Sam's Club "credibly contended" it relied on the Department's 1993 interpretation of the Ordinance. But the ALJ found that "the definition of 'use' set out in the Ordinance ***is ambiguous" and that deference to the agency's interpretation was warranted because it was "defensible." The ALJ ordered Sam's Club to pay about $266 million in unpaid taxes and interest and deferred Sam's Club's constitutional arguments for appeal.

¶ 23                                    Administrative Review

¶ 24    On administrative review before the circuit court, Sam's Club argued (i) the tobacco tax does not apply to sales to retailers with an out-of-county address, (ii) applying tax to those retailers violated the Cigarette Tax Act, and (iii) applying the Cook County tax to out-of-county businesses would be extraterritorial, an occupation tax, and a due process violation.

¶ 25    The circuit court reversed the ALJ's decision. According to the circuit court, the Ordinance did not apply to sales made to out-of-county retailers. After noting that the ALJ's findings of fact must be deemed *prima facie* true and correct, the court stated, "the facts are, for the most

part, irrelevant to the ALJ's decision (and to the issues presented by the appeal)" and described the issue as a question of law: "[W]hether the Cigarette Tax can legally be imposed on the sale of cigarettes in Cook County to retailers for resale outside of Cook County."

¶ 26 Turning to the Ordinance, the court decided that both "possession" and "use" of cigarettes must occur in Cook County to apply the tax, noting "use" under the Ordinance includes a "carve out" for "possession for sale by a retail tobacco dealer, retail cigarette manufacturer or wholesale tobacco dealer as defined in this article." Cook County Ordinance No. 16-2190, § 74-431 (approved May 11, 2016).

¶ 27 The court concluded that "[t]he carve-out for 'possession for sale' *** appears to confirm that the tax is not imposed upon a sale to another party who will be merely possessing the cigarettes for sale. As the court reads it, the Ordinance does not impose a tax on a sale from one party possessing for sale to another party who also possesses the cigarettes for sale."The court found this reading consistent with the rest of section 74-433(a), which requires that the "ultimate incidence of and liability for payment of said tax to be borne by the consumer." *Id.* § 74-433(a). The court did not defer to the Department's interpretation because the language was not ambiguous and adopting the Department's interpretation of the " 'possession for sale' carve-out would cause the tax to fall on a non-consumer, *i.e.*, a person who purchases the cigarettes for 'resale purposes.' "

¶ 28 The circuit court also found the Ordinance's collection provision did not justify imposing the tax as it mandates that wholesale tobacco dealers obtain a tax stamp from the Department for each cigarette package before delivering it to retail tobacco dealers in Cook County. *Id.* § 74-433(b). A "retail tobacco dealer" is defined as "any person who engages in the business of selling cigarettes *** in the County of Cook to a consumer whether or not they are licensed

to be a retail tobacco dealer." *Id.* § 74-431. Consequently, the tax did not apply to out-of-county retailers, as they were deemed outside the scope of engaging in the business of selling cigarettes within Cook County.

¶ 29    The circuit court also suggested that the Department's reading of the Ordinance would likely be construed as an unconstitutional tax on the occupation of tobacco sellers.

¶ 30                                                  Analysis

¶ 31                                          Standard of Review

¶ 32    We review the decision of the agency—not the circuit court—under the Administrative Review Law (735 ILCS 5/3-101 to 3-113 (West 2022)). *Wortham v. City of Chicago Department of Administrative Hearings*, 2015 IL App (1st) 131735, ¶ 13. The standard of review depends on whether the question involves facts, law, or both. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210 (2008). Findings and conclusions on questions of fact are held *prima facie* true. 735 ILCS 5/3-110 (West 2022). We will not reweigh the evidence or substitute our judgment for the agency's. *Cinkus*, 228 Ill. 2d at 210. Nor will we reverse unless the findings of fact are against the manifest weight of the evidence. *Id.* Where the question presents a mixed question of fact and law—whether the facts as introduced at the administrative hearing fall within the applicable law—the agency's determination will be disturbed only if clearly erroneous. *Wortham*, 2015 IL App (1st) 131735, ¶ 13. Finally, we review an agency's resolution of questions of law *de novo*. *Id.*

¶ 33    Under the Ordinance, a tax assessment or amended tax assessment is considered *prima facie* correct, and the party assessed has the burden to present books, records, or other documentary evidence to prove otherwise. Cook County Ordinance No. 23-5682, §§ 34-64(b)(2), 34-91(b) (approved Dec. 14, 2023). The Department suggests that since the ALJ

determined that Sam's Club failed to provide evidence to counter the Department's *prima facie* case, we face a factual question and must affirm because the hearing officer's findings of fact were not against the manifest weight of the evidence. We disagree.

¶ 34 Although the ALJ made findings of fact, which we accept as *prima facie* correct, the decision does not turn on Sam's Club's presentation of evidence. Instead, we decide on a question of statutory interpretation and must ascertain and give effect to the legislature's intent. *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 2014 IL App (1st) 132011, ¶ 19. The best indicator of intent is the statute's language, which should be given its plain and ordinary meaning. *Id.* We may not read into the statute exceptions, limitations, or conditions not expressed. *Id.* ¶ 35. Each word should be given a reasonable meaning and not rendered superfluous. *People ex rel. Department of Labor v. Sackville Construction, Inc.*, 402 Ill. App. 3d 195, 198 (2010). Also, we consider all relevant provisions. *Gardner v. Mullins*, 234 Ill. 2d 503, 511 (2009). We review statutory interpretation *de novo*. *Commonwealth Edison Co.*, 2014 IL App (1st) 132011, ¶ 19.

¶ 35 When unambiguous, courts refrain from other aids of construction or deference to the agency. See *Boaden v. Department of Law Enforcement*, 171 Ill. 2d 230, 239 (1996) (declining to defer to agency's interpretation where statute unambiguous). Ambiguity occurs when a statute cannot be interpreted from its plain language or cannot be understood "by reasonably well-informed persons" in more than one manner. *Krohe v. City of Bloomington*, 204 Ill. 2d 392, 396 (2003). The "long-held" principle that "[t]axing statutes are to be strictly construed" guides our resolution of ambiguity in a tax statute or Ordinance. "Doubts" regarding ambiguity are " 'construed most strongly against the government and in favor of the taxpayer.' " *Van's*

*Material Co. v. Department of Revenue*, 131 Ill. 2d 196, 202 (1989) (quoting *Mahon v. Nudelman*, 377 Ill. 331, 335 (1941)).

¶ 36                          Cook County Tobacco Tax Ordinance

¶ 37     Turning to the Ordinance, the parties' disagreement focuses on section 74-433(a), which imposes a tax on "all cigarettes possessed for sale and upon the use of all cigarettes within the County of Cook, the ultimate incidence of and liability for payment of said tax to be borne by the consumer of said cigarettes." Cook County Ordinance No. 16-2190, § 74-433(a) (approved May 11, 2016). "Use" is defined as "any exercise of a right or power, actual or constructive, and shall include, but is not limited to, the receipt, storage, or any keeping or retention for any length of time." *Id.* § 74-431. Excluded from "use" is "possession for sale by a retail tobacco dealer, retail cigarette manufacturer or wholesale tobacco dealer as defined in this article." *Id.*

¶ 38     The parties agree that "possession for sale" and "use" must both occur within Cook County for the tax to become due and that Sam's Club "possessed [the cigarettes] for sale." They disagree on whether the out-of-county retailers "use" cigarettes in Cook County, as the Department asserts, or, as Sam's Club contends, fall under the exclusion.

¶ 39     The ALJ found them to fall within the definition of retail tobacco dealers. But section 431 defines a "retail tobacco dealer" as "any person who engages in the business of selling cigarettes, other tobacco products, or Consumable Products *in the County of Cook* to a consumer whether or not they are licensed to be a retail tobacco dealer." (Emphasis added.) *Id.*

¶ 40     So, are out-of-county retailers engaged "in the business of selling cigarettes . . . in the County of Cook?" That answer is no. The parties and the ALJ have taken liberties with the plain and ordinary meaning of the words in section 431 to bring the out-of-county retailers

within their reach. As we stated, the Ordinance's meaning must come from its text, not from convenience.

¶ 41    The Ordinance does not define "engage[d] in the business," but *Hartney Fuel Oil Co. v. Hamer*, 2013 IL 115130 provides guidance. There, the court emphasized that, under the Retailers' Occupation Tax Act (35 ILCS 120/1 *et seq.* (West 2012)), determining whether a taxable "business of selling" is being conducted "requires a fact-intensive inquiry, to determine 'each case according to the facts.' " *Hartney Fuel Oil Co.*, 2013 IL 115130, ¶ 32 (quoting *Ex-Cell-O Corp. v. McKibbin*, 383 Ill. 316, 321-22 (1943)). The business of selling is " 'the composite of many activities extending from the preparation for, and the obtaining of, orders for goods to the final consummation of the sale by the passing of title and payment of the purchase price. *** Except for a general classification that might be made of the many retail occupations, it is necessary to determine each case according to the facts which reveal the method by which the business is conducted.' " *Id.* ¶ 30 (quoting *Ex-Cell-O Corp.*, 383 Ill. at 321-22). In addition, one minor step in the business of selling cannot conclusively govern tax situs. *Id.* ¶¶ 32-34, 63.

¶ 42    The out-of-county retailers came to Cook County for nothing other than to buy cigarettes they then sold to consumers in their counties. The lone act of buying cigarettes in Cook County cannot constitute "engaging in the business" of selling cigarettes *in* Cook County, which presupposes sustained engagement and involves a pattern of ongoing commercial activity. See, *e.g.*, 35 ILCS 120/1 (West 2022) (providing that a person who does not "habitually" sell tangible personal property at retail does not "engag[e] in the business of selling" under the Retailers' Occupation Tax Act). So, the out-of-county retailers are not "retail tobacco dealers" and do not fall under the "possession for sale" exclusion.

¶ 43  That leaves us with the status of the out-of-county retailers under the Ordinance. They are not "consumers," which is defined as "a person who purchases cigarettes, *** from a wholesale tobacco dealer, retail tobacco dealer, or retail cigarette manufacturer, and not for resale purposes." Cook County Ordinance No. 16-2190, § 74-431 (approved May 11, 2016). They purchased for resale purposes. Nor are they retail tobacco manufacturers or wholesale tobacco dealers.

¶ 44  They do, however, fit squarely into the definition of "Purchaser," which the Ordinance defines as "a buyer of cigarettes, Other Tobacco Products, or Consumable Products, *including, but not limited to*, retail tobacco dealers, retail cigarette manufacturers and/or consumers." (Emphasis added.) *Id.* An out-of-county retailer is a "buyer of cigarettes" and, thus, a "Purchaser." Neither the parties nor the ALJ and the circuit court even mentioned, let alone addressed, the definition of "Purchaser."

¶ 45  The crux of the case lies in section 74-433(f), which addresses tax collection. Section 74-433(f) provides that "[a]ny wholesale tobacco dealer shall collect the tax levied by this article from any Purchaser to whom the sale of said cigarettes, Other Tobacco Products, and/or Consumable Products is made within the County of Cook and shall remit to the County the tax levied by this article." *Id.* § 74-433(f). Under the plain language, Sam's Club, as a wholesale tobacco dealer, was required to collect the tax from "Purchasers," which encompasses in the "including but not limited" language the out-of-county retailers when it sold to them in Cook County.

¶ 46  We point out that "Purchaser" in section 431(f) is capitalized, signifying to the reader that the word is being used according to its defined meaning. See Bryan A. Garner, The Redbook: A Manual on Legal Style, § 2.9 (5th ed. 2023) ("The established convention in legal writing is

to capitalize defined terms to show that they've been defined and that they're being used as defined."). The Ordinance carefully distinguishes between a specific and a general construction of purchasers. The word is capitalized twice—in "Definitions," section 431, and in section 431(f); it is lowercase three times—twice in section 439(a) (Cook County Ordinance No. 16-2190, § 74-439(a) (approved May 11, 2016)) about wholesale tobacco dealer records on deliveries and once in section 448 (Cook County Ordinance No. 15-6025, § 74-448 (approved Nov. 18, 2015)) on transmittal of excess tax collections. Our reading, which accounts for the definition of "Purchaser," encompasses out-of-county retailers who engage in the business of selling cigarettes outside Cook County (excluded from section 431's definition of "retail tobacco dealer") who receive the cigarettes in Cook County. Those same out-of-county retailers would have had to pay just the Illinois tax by receiving the cigarettes in their county. *Id.* § 74-434(b). See *infra*, ¶ 53.

¶ 47    Although our interpretation differs from the ALJ's, we agree with the finding that Sam's Club should have placed Cook County tax stamps on the sales in Cook County to out-of-county retailers. The ALJ also found that Sam's Club failed to present evidence rebutting the Department's *prima facie* case regarding its tax liability. As noted, the ALJ's findings of fact are deemed *prima facie* true (735 ILCS 5/3-110 (West 2022)), and we will not reverse unless the findings of fact are against the manifest weight of the evidence. *Cinkus*, 228 Ill. 2d at 210. Nothing in the record indicates that the ALJ's findings of facts as to the assessment were against the manifest weight of the evidence. Thus, we affirm the ALJ's upholding of the Department's revised assessment.

¶ 48                                    Constitutional Issues

¶ 49    Sam's Club contends that if the Department assessed taxes on its sales to the out-of-county retailers, the Ordinance would be unconstitutional as an occupation and extraterritorial tax. Sam's Club also asserts that allowing the Department to assess the tax after changing its interpretation constitutes a retroactive tax and violates its due process rights.

¶ 50                    Ordinance is Not an Occupation Tax

¶ 51    To determine if the Ordinance imposes a tax "upon occupations," we consider if it (i) "regulates and controls a given occupation"; (ii) "imposes a tax for the privilege of engaging in a given occupation, trade or profession"; or (iii) "imposes a tax on the privilege of engaging in the business of selling services." *Illinois Gasoline Dealers Ass'n v. City of Chicago*, 119 Ill. 2d 391, 399 (1988). The Ordinance does not regulate or control an occupation or impose a tax on the "privilege of engaging in the business of selling services." *Id.* The tax was imposed on a product, not a service. Sam's Club contends, however, that if the tax applies to its sales to out-of-county retailers, it is a tax on "the privilege of engaging in a given occupation"—namely, selling cigarettes. We disagree.

¶ 52    The nature of a tax depends on its legal and not economic impact. *Bloom*, 52 Ill. 2d at 63; *Concannon v. Illinois Bell Telephone Co.*, 149 Ill. App. 3d 517, 524 (1986). In *Bloom*, our supreme court found that Chicago's cigarette tax ordinance, which nearly mirrors Cook County's, was not an occupation tax because, ultimately, the end users, and not the sellers, bore the tax. *Bloom*, 52 Ill. 2d at 62. By the Ordinance's plain language, the legal incidence of the tobacco tax falls on the consumer. Cook County Ordinance No. 16-2190, § 74-433(a) (approved May 11, 2016) ("ultimate incidence of and liability for payment of said tax to be borne by the consumer of said cigarettes"). That the out-of-county retailers chose to come into Cook County to buy cigarettes, perhaps for a lower price without a county tax, does not change

the nature of the Ordinance or categorize it as a tax on the privilege of engaging in an occupation for either party.

¶ 53    Furthermore, no tax would have been assessed if Sam's Club delivered the cigarettes to the out-of-county retailers' out-of-county place of operation. Under section 434(b), a wholesale tobacco dealer "doing business in Cook County shall not pay or collect a tax with respect to cigarettes *** otherwise subject to the tax when the cigarettes" sold and delivered "to a location outside of Cook County." Cook County Ordinance No. 15-6025, § 74-434(b) (approved Nov. 18, 2015).

¶ 54                                    Ordinance is Not Extraterritorial Tax

¶ 55    Sam's Club contends the Ordinance would have an extraterritorial effect when out-of-county retailers sell to consumers outside of Cook County.

¶ 56    A home rule unit, like Cook County, has the authority to exercise any power and perform any function related to its government and affairs, including the power to tax. Ill. Const. 1970, art. VII, § sec. 6(a). This power is broad and restricted only by constitutional provisions or appropriate legislation. *Mulligan v. Dunne*, 61 Ill. 2d 544, 548 (1975), *cert. denied*, 425 U.S. 916 (1976). Our constitution instructs us to construe the powers and functions of home rule units liberally. Ill. Const. 1970, art. VII, § 6(m). Moreover, a long-standing rule of construction holds that a "statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute." (Internal quotation marks omitted.) *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 184-85 (2005).

¶ 57    The Ordinance requires wholesale tobacco dealers to collect the tax from any "Purchaser" in Cook County. Cook County Ordinance No. 16-2190, § 74-433(f) (approved May 11, 2016). It is undisputed that Sam's Club made sales to the out-of-county retailers in Cook County.

Indeed, to reiterate, our interpretation takes account of section 74-435(b)(4), which makes it a violation to "[s]ell cigarettes to any person, other than to another registered Cook County wholesale tobacco dealer, *unless* each package bears an unmutilated Cook County tax stamp affixed, or where the selling wholesale tobacco dealer, or its agent, delivers the unstamped cigarettes to a location outside Cook County." (Emphasis added.) *Id.* § 74-435(b)(4). Instead, the entire transaction took place in Cook County.

¶ 58        Additionally, out-of-county retailers selling cigarettes to a consumer outside of Cook County does not make the tax extraterritorial. Many products purchased and taxed in Cook County are sold and consumed in neighboring counties. A tax on individuals who reside outside Cook County but who enter Cook County is not extraterritorial. See *Forsberg v. City of Chicago*, 151 Ill. App. 3d 354, 361 (1986) ("A local unit of government is not exercising its taxing powers extraterritorially when it collects a tax from persons located outside the boundaries of the local unit, but who do business within those boundaries."). We must look at the Ordinance's language; nothing there indicates an intent to tax sales that occur outside Cook County.

¶ 59                                                            Due Process

¶ 60        Sam's Club contends that the Department assessing taxes for past sales to out-of-county retailers creates an unconstitutional retroactive tax. Specifically, Sam's Club asserts that a due process violation occurred because, between the 1993 audit and the 2016 audit, the Department changed its interpretation of the Ordinance. Sam's Club maintains that it would not have made the sales if it had known them to be subject to the tax. Sam's Club also argues the Department's interpretation is unconstitutionally vague.

¶ 61      As to Sam's Club's reliance on the Department's previous interpretation, the United States Supreme Court has held that the Commissioner of Internal Revenue may retroactively enforce changes in its legal position. *Dixon v. United States*, 381 U.S. 68, 72-73 (1965) (holding Commissioner of Internal Revenue has unusually broad power to correct mistakes of law and enforce changes in Service's legal position retroactively, even where taxpayer may have relied to detriment on Commissioner's mistake). Retroactively applying a statutory amendment may raise due process concerns (*Landgraf v. USI Film Products*, 511 U.S. 244, 247 (1994); see *Gonzales-Blanco v. Clayton*, 110 Ill. App. 3d 197 (1982) (holding, retroactive application of Illinois Department of Registration and Education's new and more stringent rule regarding accreditation of foreign medical schools was improper)), but a change in interpretation or application does not. *Dixon*, 381 U.S. at 72-73. Here, the language has not changed. An alleged change in interpretation does not give rise to a due process violation. *Id.*

¶ 62      Sam's Club contends the Department cannot retroactively assess a tax for sales it made before the Department presumably changed its reading of the Ordinance, citing *Illinois Bell Telephone Co. v. Allphin*, 95 Ill. App. 3d 115 (1981). In *Allphin*, the appellate court found that Department regulations did not subject interstate revenues to a tax under the Messages Tax Act (Ill. Rev. Stat. 1979, ch. 120, ¶ 467.1 *et seq.*), so Illinois Bell properly excluded those revenues from its tax computation. *Allphin*, 95 Ill. App. 3d at 124. The court also held that even if it construed the Act to authorize interstate revenue taxation, the Department could not retroactively assess Bell and "totally ignore its own written rules and regulations," on which the taxpayer relied, to "retroactively assess a tax when clearly none was due" under rules then in effect. *Id.* at 126.

¶ 63        *Allphin* is distinguishable. Sam's Club was not relying on Department rules and regulations but instead on the Department's prior interpretation, which, as noted, allows a change without giving rise to due process concerns. See *Dixon*, 381 U.S. at 72-73.

¶ 64        We also disagree with Sam's Club's vagueness argument. A statute or ordinance is unconstitutionally vague and violates due process when it "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute" or lacks standards restricting the discretion of governmental authorities who apply the law. (Internal quotation marks omitted.) *East St. Louis Federation of Teachers, Local 1220, American Federation of Teachers, AFL-CIO v. East St. Louis School District. No. 189 Financial Oversight Panel*, 178 Ill. 2d 399, 425 (1997). The terms cannot be so ill-defined that their meaning may be determined at whim rather than by objective criteria. *Id.* (citing *People v. R.G.*, 131 Ill. 2d 328, 361 (1989)). If a statute can be made more definite by a reasonable construction, courts must give the statute that interpretation. *People v. Lang*, 113 Ill. 2d 407, 455 (1986).

¶ 65        Sam's Club's relies on *U.S.G. Italian Marketcaffe, L.L.C. v. City of Chicago*, 332 Ill. App. 3d 1008, 1018-19 (2002), where the appellate court concluded that the City's litter tax ordinance was unconstitutionally vague because "the same product with the same packaging sold at the same restaurant may be taxed differently and *** every individual sale must be studied by the server or cashier in order to determine whether the [o]rdinance applies." The ordinance imposed a tax of .5% of the selling price on carry-out food but exempted non-carry-out food sold for consumption at the restaurant. *Id.* at 1010-11.

¶ 66        Unlike in *U.S.G. Italian Marketcaffe*, the Ordinance's language has certainty. A wholesale tobacco dealer, like Sam's Club, must collect the tax "from any Purchaser to whom the sale of

said cigarettes, Other Tobacco Products, and/or Consumable Products is made within the County of Cook." Cook County Ordinance No. 16-2190, § 74-433(f) (approved May 11, 2016). Sam's Club's argument that the language is vague serves as a pretext for its objection to the Department's change of position. But, as noted, the Department can change its legal position retroactively, even where a taxpayer may have relied on a legal position to its detriment. *Supra* ¶ 61.

¶ 67    Notably, Sam's Club argues the Ordinance is unconstitutionally vague and violates due process. Elsewhere in its brief, Sam's Club takes the opposite position to support its contention that we should not defer to the Department's interpretation, asserting the Ordinance is unambiguous. We agree that the Ordinance is not ambiguous and have determined that it does not raise concerns about due process. Therefore, we need not address Sam's Club's contention that the "taxpayer canon" requires us to resolve uncertainty in its favor as a taxpayer. *Chicago Bears Football Club v. Cook County Department of Revenue*, 2014 IL App (1st) 122892, ¶ 26. ("In cases of doubt [tax statutes] are construed most strongly against the government and in favor of the taxpayer." (Internal quotation marks omitted.)).

¶ 68                                   Illinois Cigarette Tax

¶ 69    Lastly, Sam's Club asserts that the Department's interpretation conflicts with the Cigarette Tax Act (35 ILCS 130/1 *et seq.* (West 2022)) and that the Cigarette Tax Act takes priority.

¶ 70    The Cigarette Tax Act imposes a state cigarette tax on top of applicable local taxes by requiring that "distributors making sales of cigarettes to retailers shall include the amount of the tax in the price of the cigarettes sold to retailers" and provides that "[t]he amount of tax shall not be less than the amount of taxes imposed by the State and all local jurisdictions." 35 ILCS 130/2(j) (West 2022). The statute clarifies which local jurisdictions' taxes apply to a

sale: "The amount of local taxes shall be calculated based on the location of the retailer's place of business shown on the retailer's certificate of registration" or similar paperwork. *Id.*

¶ 71     Sam's Club contends that, regardless of Cook County's home rule authority to tax cigarettes, the Cigarette Tax Act says that the location of the retailer's business controls which local taxes are due and that Cook County imposes its tax on all wholesale cigarette purchases in Cook County regardless of the retailer's place of business. Sam's Club asserts that the Cigarette Tax Act serves a coordinating function by determining which jurisdiction may tax cigarettes and that the determination can only be addressed statewide.

¶ 72     For support, Sam's Club cites *City of Chicago v. Stubhub, Inc.*, 2011 IL 111127, where our supreme court held that "the powers of home-rule units relate to their own problems," not problems more competently solved by the state. (Internal quotation marks omitted.) *Id.* ¶ 19. The court held that home rule limits the court's "function under section 6(a) [of Article VII of the Illinois Constitution] to a threshold one, in which we can declare a subject off-limits to local government control only where the state has a vital interest and a traditionally exclusive role." *Id.* ¶ 25.

¶ 73     Thus, the State does not have an exclusive role; a home rule unit like Cook County can tax cigarettes within its jurisdiction.

¶ 74     Reversed.

---

*Sam's West, Inc. v. County of Cook*, **2025 IL App (1st) 240229**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 21-L-50523; the Hon. Patrick Stanton, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Kimberly M. Foxx, State's Attorney (Cathy McNeil Stein, Jessica M. Scheller, Paul L. Fangman, Jonathon D. Byrer, James Beligratis, and Hellin Jang, Assistant State's Attorneys, of counsel), and Kennth S. Ulrich and W. Kyle Walther, Special Assistant State's Attorneys, of Goldberg Kohn Ltd., both of Chicago, for appellants. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Catherine A. Battin, of McDermott, Will & Emery LLP, of Chicago, and Paul W. Hughes, of McDermott Will & Emery LLP, of Washington D.C., for appellee. |

---